[This and the three following cases embrace decisions of the Supreme Court and have been made during Mr. McCoun's present appointment as a justice of that court. They contain interesting equity principles and were handed by his honor to the reporter, with liberty to insert them in the present volume.]

MAYNARD

*v.* ⎬ SUPREME COURT, IN EQUITY.

MAYNARD.

An exception in a deed is that which is severable from the thing granted. An inseparable incident does not amount to an exception.

It does not amount to a reservation where a benefit is given in a deed to persons not parties to it, and having no legal title and where nothing is reserved to the grantor. But there is an *intention*, to which the court will give effect according to the intent which is to be gathered from the whole instrument.

He who takes under a deed must perform all its express and implied conditions. His election precludes objection and becomes matter of estoppel *in pais*.

Deed of grant of a farm to a son in fee : " *excepting and reserving to my three daughters H., E. and R. a right of living on the said before mentioned premises as heretofore, so long as they shall respectively remain single.*" It appeared that prior to and when the deed was executed, the daughters lived with their father and were supported with the rest of his family on the farm and they so remained with the son (their brother, the grantee) until his death and they were still on the farm. In a partition suit, the question was as to the extent of their right or estate ? *Held*, that the clause implied not only the mere being upon the premises but also subsistence, the means of living—a home. And the court pointed out how it could be provided for in a decree for sale and partition.

BILL filed for the partition of certain real estate in the town of Harrison, Westchester county.

The plaintiff was the widow of Jeremiah Maynard, deceased, who had devised to her (by his will) a life estate in one-third of his estate and to his three children who were infants, the residue of his property.

Three adult defendants, Rebecca, Hannah and Esther Maria Maynard, were the sisters of the testator Jeremiah

*Aug. 8,*
*1848.*

*Deed.*
*Exception.*
*Reservation.*
*Intention.*
*Words.*
*Partition.*

Maynard; and they were made parties as having or claiming some interest in or lien upon the property sought to be partitioned.

Jeremiah derived title to the property by a deed from his father Elisha to him, bearing date the eleventh day of July one thousand eight hundred and thirty-five, founded on the consideration of natural love and affection and of one dollar. This deed conveyed by words of gift, grant, bargain and sale the lands described in it, together with all and singular the hereditaments and appurtenances. And the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and then followed these words :—" excepting and reserving to my three daughters, *to wit,* Hannah, Esther Maria and Rebecca a right of living on the said before mentioned premises as heretofore, so long as they shall respectively remain single and unmarried. Habendum all and singular the premises—" excepting as herein before excepted"—to the grantee his heirs and assigns, to his and their own sole and proper use, benefit and behoof for ever.

The case came up on pleadings and proofs. Sufficient of the facts and evidence appear in the opinion of the court.

Mr. *J. W. Mills,* for the plaintiff: 1. The reservation in the deed in favor of the three daughters is a mere right to live on the farm without a support. 2. Their remaining upon the place depends on the will of either Jeremiah or his father; and either of them had a right to determine its duration and enjoyment at any time, that is to say, Elisha had a right to determine it and so had Jeremiah as standing in his place. 3. The reservation has no effect or validity as conferring any right whatever.

These three daughters being strangers to the deed, take no interest by a reservation : 2 Blackstone, 299 ; Cruise on Real Property, book 4, p. 47 ; 3 Leonard's R. 60 ; Bacon's Abr. *Grant,* 395 ; 9 J. R. 73 ; 12 ib. 199. Even if it is a covenant, the reservation can only be claimed as an implied covenant to stand seized. All implied covenants are abolished : 1 R. S. (2d ed.) 731, § 140.

Mr. *J. W. Tompkins,* for the daughters. Three questions are involved: 1. Does the deed confer a right in or charge upon the lands in favor of the three daughters? 2. If it does, what is the extent of it? 3. Can the devisees of Jeremiah Maynard have a sale or partition in any way except subject to the right or claim of the three daughters?

This court has jurisdiction to settle the rights of all the parties and to do justice between them. The spirit and intention of the deed is to be carried out fully as a matter of equity. The powers of the court are adequate: *Quick* v. *Stuyvesant,* 2 Paige's C. R. 84. The intention of the deed is manifestly to confer a support and not to make them mere tenants at will. The widow and children of Jeremiah Maynard are estopped from denying the practical effect which was given to the deed during his lifetime: 3 Wendell's R. 632. The court is to disregard technical rules of law and to give effect to deeds and wills according to intention. This deed was founded on natural love and affection for the daughters as well as the son. The legal effect of this clause in the deed is a covenant by Jeremiah to his sisters to give them a support; but if not, still there is an equity arising from it which this court will enforce: 1 Barb. Ch. R. 125; 2 ib. 194. The legal doctrine of a reservation to a third person being void has no application in equity. But, at this day, under the revised statutes, the old law is abrogated: *Jackson* v. *Swarts,* 20 J. R. 85; *Bleecker* v. *Bingham,* 3 Paige's C. R. 246. This clause is sustainable as a trust in favor of the daughters against Jeremiah as a trustee: § 55 to § 66 of the Statute of Uses and Trusts; of Powers, § 91 to § 108. Another view is conclusive: a charge or equitable lien is created for the daughters' support: 2 Barb. Ch. R. 194. Then, what is the extent of the daughters' interest in the property? It is not merely a possession, but a living or support: *Arthur* v. *Case,* 1 Paige's C. R. 449; S. C., 3 Wend. 632. What is the provision? A gift to the son and also a beneficial provision at the same time for the daughters. They claim to have the same comfortable support they were accustomed to receive in their father's house. This can be estimated and ascertained. The court can, by a reference, ascertain how much per year would be a fair

1848.

MAYNARD
v.
MAYNARD.

support; and also what it will amount to, and so set apart as much of the proceeds of sale as will yield the amount annually so long as the daughters remain single, &c. The will of Jeremiah Maynard enjoins it on his widow and children to remain on the farm. This they disregard. If they would continue to hold the farm and live there, the three adults would also do so; but, since the widow chooses to sell, then money is to be allowed. But these defendants prefer to live upon the property and have a home there. There can be no right to turn them off even through a pecuniary compensation. The clause here amounts to an express covenant.

Mr. *Mills*, in reply. The idea is not a correct one, that here is a covenant binding on Jeremiah Maynard. There is no expression to that effect; and all implication is now forbidden. In fact, it is nothing more than an exception or reservation. It was revokable by the grantor in his lifetime. The father could have refused to furnish his daughters a support at any time. So could Jeremiah and so can his widow and children. But, admitting they have a right to live on the place, they have not a right to be supported there. The deed was made in July, 1835, and in September following the father made his will and gave each daughter three hundred dollars. The revised statutes have cancelled the doctrine contained in *Jackson* v. *Swarts*.

*By the Court.* McCOUN, JUSTICE :—The question is, what effect, if any, have the words in the deed in favor of the grantor's three daughters, and what rights have they acquired under the deed?

At common law, the words would have no force or effect as an exception, because an exception in a deed must always be of a part of the thing granted. It must be of something that already exists and not of any thing that is to arise or accrue afterwards. It cannot be of an inseparable incident, but must be of such a thing as is severable from that which is granted: Shep. Touch. Prest. ed. 78, 80; Coke Litt. 47, a. note (*b.*) Here, the thing granted is the farm composed of two distinct parcels of land. No part of the land is excepted; and the right reserved cannot be separated

from it. Hence, it is not strictly and properly the subject of an "exception." Nor is the clause in the deed effectual as a reservation according to the common law, for the reason that it reserves nothing to the grantor, but is made for the benefit of third persons who are not parties to the deed and who, in a legal sense, are strangers to it and to whom the deed does not profess in terms to convey any legal title : Shep. Touch. 80, 81; *Jackson* v. *Swart*, 20 John. R. 85; *Case* v. *Haight*, 3 Wend. 632. I think, however, the case is relieved from all difficulty arising from common law rules in respect to exceptions and reservations. The revised statutes having abolished the common law mode of conveyance by feoffment with livery of seisin and converted deeds of bargain and sale and lease and release into grants and, at the same time, abrogated the doctrine of implied covenants in conveyances of real estate and abolished uses and trusts except as therein expressly authorized and then having declared that "in the construction of every instrument creating or conveying, or authorizing the creation or conveyance of any estate or interest in lands, it shall be the duty of courts of justice to carry into effect the intent of the parties, so far as such intent can be collected from the whole instrument and is consistent with the rules of law;" (1 R. S. 728, sec. 2,) the only thing the court has to do is to ascertain the "intent;" and when that is done, to carry it into effect, unless, indeed, the object and intention of the deed is to perpetrate a fraud or is against good morals or public policy or is forbidden by some positive rule of law. Now, looking into the deed in question, it is easy to perceive that the grantor, in making the conveyance of the farm to his son, not only intended to settle the property upon him by way of gift or advancement, but, at the same time, to make a provision out of it for his three daughters. The extent of that provision is another question. But, whatever it may be, the court is bound to give effect to the clause of the deed in which it is contained and to award to them the benefit of it according to the clear intention of the whole instrument: for, although the clause is not good as a technical exception or reservation, yet it is good as denoting an intention which is not inconsistent with the rules of law. There is, likewise, an-

other principle which courts of justice cannot fail to recognize and which precludes the grantee in such a case as the present and those claiming under him from taking an objection to any part of the deed as being inoperative and void. The principle is this, " that no man can claim under a deed or will without confirming the instrument under which he claims; for, when he claims under a deed, he must claim under the whole deed together : he cannot take one clause and ask the court to shut its eyes against the rest." This was the language of Lord Loughborough in 2 Ves. jun. 676. And of similar import was that of Lord Roslyn as quoted by Lord Redesdale in 2 Sch. & Lef. 266, 267 : " that no person puts himself in a capacity to take under an instrument, without performing the conditions of the instrument, and they may be express or implied. If it is stated or can be collected that such was the intention of the parties to the instrument, that intention must be complied with." (See also Stalman on Election and Satisfaction, 195.)

No person is bound to accept a gift or grant; but if he elects to accept, he is bound to comply with the terms or conditions on which it is given. His election once made precludes all objection on his part to the effect of the instrument according to its true meaning. It becomes a matter of estoppel *in pais*. The proofs in the cause show that Jeremiah, the grantee, accepted the deed. He held and occupied the farm under it until his death. His widow and children claim title under it at this time. They, indeed, have no other source of title to the property which is the subject of this suit; and are bound, therefore, to give effect to every part of the deed. Then, to the question of extent of the right claimed by the three daughters? As expressed in the deed, it is " a right of living on the before mentioned premises as heretofore, so long as they shall respectively remain single and unmarried." " Of living," this it is said imports a mere right of staying on the place or occupancy. But it imports more. It imports subsistence, the means of living, a home; and when we have the qualification " as heretofore," we are to look to the evidence of their manner of living on the farm before and at the time the deed was given. It is in proof that the father with his wife and his

three daughters and son Jeremiah, composing the family, moved from Delaware county and settled on this farm in the spring of the year one thousand eight hundred and twenty-eight. They resided there when this deed was executed in the year one thousand eight hundred and thirty-five. The daughters received their support from the farm in common with the other members of the family, performing, at the same time, the ordinary household duties of daughters in a family. They had no other means of support. Even after the deed was executed, the family continued to reside together without any apparent change in their household, Jeremiah being still one of the family; the father died in the month of May one thousand eight hundred and forty; and after his death the daughters and Jeremiah continued to live together in one family as usual. In the month of February one thousand eight hundred and forty-one Jeremiah Maynard married. After which the daughters resided by themselves in one part of the house, but continued to receive their support from the farm. · In the fall of the year one thousand eight hundred and forty-five a conversation is proved to have taken place on the occasion of Jeremiah producing the deed and allowing it to be read for the information of his sisters, in which he fully admitted that he knew they were entitled to be supported from the farm and that he had never disputed it. He died in the month of September one thousand eight hundred and forty-seven, leaving them residing on the farm and where they still remain. It is proved that the eldest of them is forty-seven years of age, that the next is forty-two, and the youngest is forty-one years old. None of them have been married. From these facts it abundantly appears that the living they had been accustomed to receive prior to and when the deed was made was a comfortable support from the farm as members of the family residing upon it; and Jeremiah has given to their right its practical effect by allowing them to have, in his time, a home upon the place and the means of subsistence such as the farm was capable of yielding. This they will be entitled to receive so long as they remain unmarried—virtually, it amounts to a life

estate *pro tanto* in the property. Possibly their right or the right of some of them may terminate sooner.

There are two ways of providing for it by a decree:— First, To except it from the sale i. e. to sell subject to the right (taking it for granted that an actual partition cannot be made with propriety between the widow and children.) Second, To order a sale including the right and interest which the three daughters have in the property; and, in that event, to ascertain, by a reference, the annual worth or value of the support they are entitled to receive from the farm and, then, to set apart so much of the proceeds of sale to be invested in government stock or on bond and mortgage as will produce the amount.

The statute in relation to the partition of lands contains the proper directions for such decrees : (2 R. S. 325.)

The plaintiff may elect which form of decree to take.