**BURNS et al. v. BASTIEN et al.**

No. 24351.   Oct. 1, 1935.

Simons, McKnight. Simons, Mitchell & McKnight, for plaintiffs in error.

Kruse & Edwards, for defendants in error.

PER CURIAM. This action was commenced in the district court of Garfield county by Katherine M. Burns against George Bastien, Lillie M. Bastien, Charles Bastien, and the unknown heirs, executors, etc., of Eugene L. Bastien, deceased, and J. E. Mahoney, for the purpose of quieting title to a one-fourth interest in the oil and gas rights in certain lands in Garfield county. Subsequently, E. E. Mead was made a party defendant upon motion of the defendant Mahoney. Thereafter an amended petition was filed, in which Katherine M. Burns and E. E. Mead joined as plaintiffs. Subsequent to the trial, the defendant Mahoney died, and the cause has been revived in the name of the Central National Bank of Enid, Okla., trustee and executor of the last will and testament of J. E. Mahoney, deceased, Nora Price Mahoney, Billy Mahoney, John Mahoney, Helen Mahoney, Elizabeth Mahoney, and Marie Delaney Mahoney. The only controversy in this appeal is between the plaintiffs and the executor and devisees of J. E. Mahoney, deceased, who will be referred to herein as the defendants.

The parties occupy the same relative position in this court as below and will be referred to herein as plaintiffs and defendants, respectively.

On April 5, 1919, George Bastien, being then the owner of the land in question, joined by his wife, executed a warranty deed to H. W. Trippett. The deed is in the usual form, but immediately after the description of the land, contains the following:

"Reserving an undivided three-fourths interest in and to all the royalties of oil and gas under and pertaining to said premises, which said reservation of royalty shall belong to George Bastien, Charles Bastien, and E. E. Mead, share and share alike."

It is admitted that this deed was made to H. W. Trippett as the agent or trustee of J. E. Mahoney, for the purpose of mortgaging said property. Trippett executed a mortgage on said premises, and thereafter, and on the 9th day of April, 1919, joined by his wife, executed and delivered a deed to J. E. Mahoney, containing the identical reservation quoted above.

On the 19th day of January, 1924, E. E. Mead and wife executed and delivered a warranty deed to Katherine M. Burns, but, inasmuch as the grantor and grantee are both parties plaintiff, it is not necessary to consider that deed. Suffice it to say that the deed purports to convey an undivided one-fourth interest in the royalties of oil and gas under and pertaining to the land in question, but does not specifically grant the right of ingress and egress.

Plaintiffs contend that the reservation in the deed of the one-fourth interest in the oil and gas royalty for the benefit of Mead was made pursuant to an agreement between Mead and Mahoney, wherein Mead purchased that interest from Mahoney in consideration of $100 paid at the time; that it was thought that the best way of passing title was by the reservation in the deed from Bastien, and it was agreed that Bastien should reserve that interest. Plaintiffs' suit is based upon the theory that title vested in Mead by means of the reservation, but that, if not, the deeds should be reformed to include the rights of ingress and egress, and defendants Mahoney, George Bastien, and Charles Bastien should be adjudged to hold said interest in trust and should be compelled to convey the same to plaintiffs.

Defendants deny that Mead purchased said interest from Mahoney, or that he paid any consideration therefor, and contend that Mahoney did not know that the reservation was in the deeds until some five years later when he endeavored to mortgage the land, at which time his attention was called thereto by the mortgage company. Defendants further contend that the reservation is void, that plaintiffs' action is barred by the statute of limitations, and that the plaintiff Mead agreed to reconvey said interest in consideration of the cancellation of a note which he had executed to Mahoney; that Mahoney destroyed the note, but that Mead failed to execute the conveyance. Mahoney filed a cross-petition and prayed that his title be quieted. The court rendered judgment for the defendants, and plaintiffs have appealed.

This being an equity case, the judgment will not be disturbed unless it is clearly against the weight of the evidence. Conversely, if the judgment is clearly against the weight of the evidence, this court will

set it aside and render such judgment as the trial court should have rendered. Donaldson v. Josey Oil Co., 106 Okla. 11, 232 P. 821. The judgment is in general terms and carries with it a finding of all facts necessary to sustain it which the court could have found from the evidence. We conclude that the findings are not clearly against the weight of the evidence as to the consideration for the reservation and the alleged agreement of Mead to reconvey, and those issues must be resolved in favor of the defendants. But we think the evidence clearly shows that Mahoney had knowledge of the reservation and that it was made with his consent. He accepted and retained for five years, without objection or protest, the deeds with the reservations plainly written therein. If he did not have actual knowledge of the reservation, his agent, Trippett, did, and he is bound by that knowledge. Not only did Trippett know of the reservation, but he wrote the same reservation in his deed to Mahoney. It is incredible that the parties to these deeds, Bastien and Trippett, would have made the reservation in the absence of instructions from Mahoney, especially since it is not claimed that there was any fraud in the transaction. We are convinced by the record, particularly by Mahoney's own testimony, that he did not regard the oil and gas rights as of any value at the time he purchased the land, and that his only interest was in the land for farming purposes. When he tried to renew or make a new mortgage on the land and the mortgage company objected to the outstanding royalty interests, he awakened to the situation and set about to acquire the royalty interests. He acquired the one-half interest of the Bastiens, which, it is admitted, was reserved in the original deed with the consent of Mahoney. The deed to that interest is not in the record, and the details of that transaction are not shown. While Mahoney denied that Mead paid anything for the mineral interest, he did not deny that he agreed that Mead should have the interest. Mead was a tenant of Mahoney's and apparently had something to do with negotiating the deal between Mahoney and Bastien. According to Mahoney's testimony, Mead advised Mahoney not to permit Bastien to reserve one-half of the oil and gas royalty. Mahoney replied that he only wanted the land for farming purposes. Mead then said, "If you don't want the royalty, give me a fourth of it." Mahoney replied: "You know what is best for my interest. I don't think you would take advantage of me."

To properly appraise the rights of the parties under these facts, it becomes necessary to ascertain in whom the title to this royalty was vested at the time the suit was filed. If it was in Mahoney, plaintiffs' action must fail because, according to the facts adjudged by the trial court, there was no consideration for the agreement between Mahoney and Mead that Mead should have the royalty interest, and such agreement, if made, will not be enforced. If the title was in the plaintiffs, the agreement of Mead to reconvey was void because not in writing. Section 9455, O. S. 1931; Woodworth v. Franklin, 85 Okla. 27, 204 P. 452; Cuff v. Koslosky, 165 Okla. 135, 25 P. (2d) 290.

The first question that challenges our attention is whether or not the term "royalties of oil and gas" used in the reservation is a sufficient description to reserve anything, and, if so, what? The record does not disclose whether or not, at the time the deeds were made, there was an existing oil and gas lease, but our decision would be the same in either event. We take judicial notice of the fact that lands in this state are usually developed for oil and gas by means of leases, and that as a rule, the owners of land do not develop it. In a strict sense, the royalty is that portion of the production, or the proceeds thereof, reserved to the lessor in consideration of executing the lease, but it is a cardinal rule of construction that a conveyance must be so construed as to give effect to the intention of the parties when that intention can be ascertained. Barker v. Campbell-Ratcliff Land Co. et al., 64 Okla. 249, 167 P. 468, L. R. A. 1918A, 487; Ramey v. Stephney, 70 Okla. 87, 173 P. 72.

In Toothman v. Courtney, 58 S. E. 915, 918, the Supreme Court of Appeals of West Virginia held that a deed to land, reserving to the grantor "all the oil rental," was a reservation of the title to the oil in place:

"Though he did not reserve by name the oil in place, or any part of it, his reservation of all the rental or royalty to be derived from it compels the court to hold, by construction of the instrument, that it vests in him the title to that thing, the beneficial use whereof has been reserved, namely, the oil in place. Jarman on Wills, marg. p. 741, says: 'A devise of the rents and profits or of the income of land passes the land itself both at law and in equity—a rule, it is said, founded on the feudal law, according to which the whole beneficial interest in the land consisted in the right to take the rents and profits.' * * *

"Not doubting the soundness of this legal proposition or its applicability in the construction of deeds, as well as wills, I unhesitatingly make use of it here, because it will operate justly, fully effectuating the in-

tentions of the parties. The oil was already under lease, and the royalty, or oil rental, is all it can ever yield to its owner. That reserved to Toothman, he has the entire beneficial use of the oil, the equivalent of the ownership of it in place. * * *

"If there had been no lease on the land, I would be of the same opinion, for a reservation of all possible benefit of the oil is tantamount to a reservation of the corpus thereof. It matters not that, in such case, there would be a presumption that one-eighth is the royalty contemplated, it being the usual royalty, for that presumption is inseparable from the further one that the remaining seven-eighths goes with the royalty as a means of making it available, or realizing it; for, where one-eighth is the royalty, the residue never benefits the landowner otherwise than by enabling him to get the one-eighth. It is given to the lessee as compensation for producing and delivering the royalty. The two presumptions are locked in indissoluble companionship. They unite in pressing the view that a grant, exception, or reservation of the one-eighth royalty carries with it, as a satellite of the royalty, the seven-eighths 'working interest'."

A like conclusion was reached by the same court in Paxton v. Benedum-Trees Oil Co., 94 S. E. 472, wherein it was held that a grant of "one-half of all the royalties, incomes and rentals that may hereafter arise therefrom or accrue upon the real estate hereinafter described by virtue of any oil and gas lease, or leases, now on said several tracts of land or which may hereafter be placed on said several tracts of land or any of them" was a grant of one-half of the oil in place.

These cases were cited with approval by this court in Dunlap v. Jackson, 92 Okla. 246, 219 P. 314, wherein it was held that a reservation in a deed of "three-fourths of the royalty of all oil or gas or the proceeds therefrom" was valid. There was an existing oil and gas lease on the property at the time of the conveyance, and that fact, together with the words "or the proceeds therefrom" contained in the reservation, are the only distinguishing features between that case and the one at bar. Obviously, the additional words quoted tend to weaken rather than strengthen the reservation, if they have any effect at all.

In Payne, Secretary of the Interior, v. United States ex rel. Mosier et al., 269 F. 871, the Court of Appeals of the District of Columbia held that an Act of Congress relating to the Osage Indians, which provided that **royalty** received from oil and other mineral leases upon lands selected and divided as therein provided should be distributed to the individual members of the Osage Tribe, included bonuses paid for such leases. The court said:

"This money may not be royalty in the strict sense of the word, but it is certainly money derived from 'oil * * * leases upon the lands,' to quote the language of the statute. * * *

"The court is of the opinion that Congress did not use the word 'royalty' in the restricted sense, but used it in the sense of the word 'proceeds' to be distributed in the way directed."

The Supreme Court of the United States had held that a bonus for an oil and gas lease stands in the same category as money paid as royalty upon oil and gas produced, within the meaning of a provision of the income tax act allowing deduction for depletion of oil and gas wells of a stated percentage of the gross income from the property, even where no oil or gas is produced. Herring v. Commissioner of Internal Revenue, 293 U. S. 322, 79 L. Ed. 389.

In Humphrey v. Taylor, 106 Okla. 38, 233 P. 180, this court affirmed a judgment granting specific performance of a contract to convey "one-half royalty fee simple in regular commercial 28 form," without discussing the meaning of the quoted phrase.

In Wilson v. Olsen, 167 Okla. 527, 30 P. (2d) 710, this court held:

"Deed purporting to convey realty in consideration of $1 and for additional consideration of undivided one-third interest in all of 'royalties' of gas, oil, and minerals and rights thereto held sufficient to reserve one-third of oil, gas, and mineral rights, or at least to put prospective purchaser on inquiry."

In the body of the opinion the court said:

"The phrase 'an undivided one-third interest in and to all of the royalty of the gas, oil and mineral and the rights thereto,' may be said to be ambiguous to the point that it requires additional information from which to determine with absolute certainty its exact meaning. Had the words 'and the rights thereto' been omitted, it might be logically concluded that the reservation referred to 'royalty' taken in a strict sense, and as defined by Webster's New International Dictionary as, 'a share of the product or profit reserved by the owner for permitting another to use the property,' and as defined in the various judicial pronouncements cited by plaintiff in error. The addition, however, of the words, 'and the rights thereto,' must either be construed as a mere repe-

tition, or as referring to gas, oil, and mineral rights. And the suggestion that it referred to gas, oil, and mineral rights is the more pronounced by reason of the fact that at the time of the execution of the deed there was no oil and gas lease on the property, and at that time, at least in the strict sense, there were no royalty rights to reserve or deal with in any manner."

In Beam v. Dugan, 23 P. (2d) 58, the Court of Appeals of California had under consideration a conveyance which recited the execution of a certain lease which reserved to the landowner a certain royalty. The interest described in the conveyance was "out of our landowner's royalty an undivided three-fifths of one per cent. in and to any and all oil produced and saved from any wells to be drilled." Notwithstanding the recital of the existing lease, the court held that the conveyance was not limited to royalties under that lease, but conveyed a perpetual interest. The court said:

"But the conveyances do not limit the rights of the vendees to the royalty paid under the first lease to Dumas. * * * It would have been a simple matter for the grantors to follow the customary course of expressly limiting the rights of the vendees to the royalties to be paid under the existing lease."

The above authority is particularly applicable in view of section 9698, O. S. 1931, which provides:

"Every estate in land which shall be granted, conveyed or demised by deed or will, shall be deemed an estate in fee simple and of inheritance, unless limited by express words."

We conclude, therefore, that the term "royalties of oil and gas" in the conveyance in question was used in the sense of proceeds or income from those minerals, and, under the doctrine of the West Virginia cases cited above, approved by this court in Dunlap v. Jackson, supra, the reservation carried with it the beneficial ownership of those minerals. We do not, of course, follow the West Virginia court to the extent of holding that oil and gas are owned in place, for this court does not subscribe to that theory. But we do hold that the right to go upon land to prospect for and take the oil and gas is a proper subject of ownership which may be granted or reserved, and that the term here under consideration was sufficient for that purpose. Ramey v. Stephney, 70 Okla. 87, 173 P. 72; Rich v. Doneghey, 71 Ok'a. 204, 177 P. 86; Dunlap v. Jackson, supra; Dill v. Rockwell, 94 Okla. 25, 220 P. 620; Wright v. Carter Oil Co., 97 Okla. 46, 223 P. 835; Myers v. Hines, 149 Okla. 232, 300 P. 309; Smith v. Kerr, 100 Okla. 162, 228 P. 951.

We are not unmindful of the cases of Miller v. Sooy, 242 P. 140, and Bellport v. Harrison, 255 P. 52, wherein the Supreme Court of Kansas refused to follow the rule laid down in the West Virginia cases. But this court is already committed to that doctrine, and we think it sound. Under the Kansas rule the conclusion in this case would be that nothing was reserved by the deed. Obviously, that would not give effect to the intention of the parties. They intended to reserve something, and we think our construction gives effect to their intention.

There is no merit in the contention that the reservation in the deed was inoperative because the term "reserving" was used instead of "excepting." These terms are used interchangeably, and the technical meaning will give way to the manifest intent, even though the technical term to the contrary is used. 18 C. J. 341. This court has, on a number of occasions, given effect to "reservations" of oil and gas rights. Dunlap v. Jackson, supra; Smith v. Kerr, supra; Janeway v. Whitaker, 106 Okla. 83, 233 P. 197.

It was not necessary that the deed expressly reserve the right of ingress and egress. As we have construed the deed, it reserved in the grantors the oil and gas rights which included the right of ingress and egress. Moreover, this being a reservation and not a grant, the right of ingress and egress is implied. Smith v. Kerr, supra; Morgan et al. v. McGee, 117 Okla. 212, 245 P. 888; Newbern v. Gould, 162 Okla. 82, 19 P. (2d) 157.

It is the general rule that a reservation or exception may not be made in a deed in favor of a stranger or one not a party to the instrument; but it may, when so intended, operate as an exception to the grant. Generally, however, all reservations, unless otherwise expressed, operate in favor of the grantor. He, however, may convey the thing reserved. 18 C. J. 345. See annotation in 39 A. L. R. 131.

In Martin v. Cook, 60 N. W. 679, the Supreme Court of Michigan held that where the grantor reserved to himself and to his daughter, who was a stranger to the deed, an estate for the lives of both in the property conveyed, the life estate was valid as an exception to the grant in the deed, and the grantee was not entitled to possession of the property until both the grantor and his

daughter had died. The court in that case said:

"In Maynard, v. Maynard, 4 Edw. Ch. 711, the father deeded to his son, 'excepting and reserving to my three daughters, H., E., and R., a right of living on the said before-mentioned premises, as heretofore, so long as they shall respectively remain single.' Prior to the execution of the deed, the daughters lived with their father, and were supported with the rest of his family on the farm, and they so remained with the grantee until his death, and were still on the farm. The court gives to the terms 'reservation' and 'exception' their technical signification, and holds that the language used has no force or effect either as an exception or a reservation; nevertheless that, 'the Revised Statutes having abolished the common-law mode of conveyance by feoffment with livery of seisin, and converted deeds of bargain and sale and lease and release into grants, and at the same time abrogated the doctrine of implied covenants in conveyances of real estate, and abolished uses and trusts, except as therein expressly authorized, and then having declared that in the construction of every instrument creating or conveying, or authorizing the creation or conveyance of any estate or interest in lands, it shall be the duty of courts of justice to carry into effect the intent of the parties, so far as such intent can be collected from the whole instrument and is consistent with the rules of law, the only thing the court has to do is to ascertain the 'intent,' and, when that is done, to carry it into effect. * * * Looking into the deed in question, it is easy to perceive that the grantor, in making the conveyance of the farm to his son, not only intended to settle the property upon him by way of gift or advancement, but, at the same time, to make a provision out of it for his three daughters. The extent of that provision is another question. But, whatever it may be, the court is bound to give effect to the clause of the deed in which it is contained, and to award to them the benefit of it according to the clear intention of the whole instrument; for, although the clause is not good as a technical exception or reservation, yet it is good as denoting an intention which is not inconsistent with the rules of law.' * * *

"From an examination of the cases cited, and the decisions of the courts of this country, generally, upon the question here involved, it will be observed that, while the rule that a reservation in favor of a stranger to the instrument is invalid as a reservation has been adhered to, yet, in order to effectuate the intention of the grantor, such a reservation has uniformly been treated as excepting from the grant the thing reserved. Nor has this holding been confined to cases where the reservation had been previously carved out. It has been repeatedly held that a conveyance of land, reserving or excepting the dower interest of a stranger to the deed, was a good exception."

We do not, however, construe the reservation in question as one in favor of a stranger. The reservation was to the grantors. It was complete and operated to except from the grant three-fourths of the oil and gas rights without the clause "which said reservation of royalty shall belong to George Bastien, Charles Bastien, and E. E. Mead, share and share alike."

Except for the agreement between Mead and Mahoney, Mahoney would not have been concerned in the last quoted clause. He would have taken the title subject to a reservation of three-fourths of the oil and gas rights, and would have had no concern with the ownership of the reserved estate. This declaration of ownership by the grantor was sufficient to and did create an express trust in favor of E. E. Mead for one-fourth of the oil and gas rights. No particular words are necessary to create a trust. Whatever evinces the intention of the party that the property of which he is the legal owner is beneficially another's is sufficient. It is not necessary that the terms "trust" and "trustee" should be used. Nor is it necessary that the instrument creating the trust be delivered to the beneficiary, where the fact of the declaration is made known. 26 R. C. L. 1182; 65 C. J. 265; I Perry on Trusts, sec. 82; 3 Thompson on Real Property, page 313; Chicago, M. & St. Paul R. Co. v. Des Moines U. R. Co., 254 U. S. 196, 65 L. Ed. 219, and see annotation 12 L. R. A. (N. S.) 547. It is not necessary that the writing should have been made for the purpose of declaring the trust. 1 Perry on Trusts, sec. 82; Osborn v. Rearick (Ill.) 156 N. E. 802. The words used in the deed clearly import that Mead should be the beneficial owner of a one-fourth interest in the oil and gas rights in praesenti. It was not contemplated that any other instrument was necessary to invest him with title. We therefore conclude that a valid express trust was created. See Kimberly v. Cissna, 161 Okla. 17, 16 P. (2d) 1090; Rollestone v. National Bank of Commerce (Mo.) 252 S. W. 394; La Fleur v. M. A. Burns Lumber Co. (Cal.) 205 P. 102.

The trust was an executed one, and no consideration is required to support it. In 3 Thompson on Real Property, page 318, it is said:

"As a general rule no consideration is required for a trust clearly created, if no further conveyance on the part of the settlor is required in order that the court

may give effect to it as an executed trust. But a mere voluntary trust, imperfectly created or promissory in its nature, will not be enforced. When there is no sufficient consideration, and the trust is executory, a voluntary settlor cannot be compelled to complete the trust."

See, also, 65 C. J. 240.

It should be borne in mind that Bastien makes no claim to the property. The reservation was made by him only to carry out the agreement between Mahoney and Mead. The situation is no different than if Mahoney had acquired title and conveyed to Bastien for the use and benefit of Mead. Lack of consideration would not entitle Mahoney to any relief in such case. It would be an executed gift. And so it is here.

If it be contended that the later deed from Bastien to Mahoney operated to convey the interest reserved for Mead, the answer is twofold: (1) The deed is not shown in the record, and we cannot know whether it purports to convey that interest; (2) there is no showing of authority of Bastien as trustee to make the conveyance, and there is no presumption of authority of a trustee to convey the trust property. 26 R. C. L. 1284; Geyser-Marion Gold Mining Co. v. Stark (8 C. C. A.) 106 Fed. 558; School District v. Peninsular Trust Co., 13 Okla. 479, 75 P. 281; Roberts v. Morgan, 56 Okla. 513, 156 P. 319. We may go further and say that, this being a dry or passive trust, the trustee had no authority to convey. 2 Perry on Trusts, sec. 521.

In 2 Perry on Trusts, sec. 520, the author says:

"It is a simple or dry trust, when property is vested in one person in trust for another, and the nature of the trust, not being prescribed by the donor, is left to the construction of law. In such case the cestui que trust is entitled to the actual possession and enjoyment of the property, and to dispose of it, or to call upon the trustee to execute such conveyances of the legal estate as he directs. In short, the cestui que trust has an absolute control over the beneficial interest, together with a right to call for the legal title, and the person in whom the legal title vests is a simple or dry trustee."

This, then, is a dry or passive trust, and the entire beneficial interest has been in Mead and his grantee at all times since the deed from Bastien to Mahoney was executed. Mahoney never at any time had title to the mineral interest in question. How, then, can he maintain an action to quiet title? It would be necessary for the court to compel Mead or Bastien, or both, to convey this

interest to Mahoney before his title could be quieted. The pleadings are not framed for that purpose, and there is no evidence which would justify such a judgment. Under the facts of this case, the court will leave the title where it finds it.

Having concluded that the title to the mineral interest in question is vested in the plaintiffs, it follows that an action to quiet title is the proper remedy. Morgan v. McGee, supra; American Investment Co. v. Davenport, 151 Okla. 184, 3 P. (2d) 434; Marshall v. Ward, 167 Okla. 183, 28 P. (2d) 1091; Cuff v. Koslosky, supra. Moreover, Mahoney filed a cross-petition, seeking to quiet his title. The court had jurisdiction to determine the rights of the parties under his pleading if it did not under plaintiffs'.

The question of the statute of limitations is raised in defendants' pleading, but it is not urged in their brief. There is no merit in the contention. Section 99, O. S. 1931; Barker v. Campbell-Ratcliff Land Co., 64 Okla. 249, 167 P. 468; 26 Mills-Willingham Law of Oil and Gas, sec. 17.

The judgment of the trial court is reversed, with instructions to enter judgment for plaintiffs, quieting their title to the one-fourth interest in the oil and gas rights.

The Supreme Court acknowledges the aid of Attorneys Rayburn L. Foster, A. O. Harrison, and James D. Talbott in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Foster, and approved by Mr. Harrison and Mr. Talbott, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, PHELPS, and CORN, JJ., concur.