COLONIAL ROYALTIES CO. et al.

v.

KEENER et al.

MIDSTATES OIL CORP.

v.

KEENER et al.

Nos. 35006, 35007.

Supreme Court of Oklahoma.

Dec. 22, 1953.

Rehearing Denied Feb. 2, 1954.

Stecle, Daugherty & Downey, Mildred Brooks Fitch, Hulette F. Aby, and Charles W. Barnes, Tulsa, for plaintiffs in error.

Otey, Johnson & Evans, Ardmore, for defendants in error.

BLACKBIRD, Justice.

These cases which have been presented and briefed as consolidated will be so considered herein. They both involve, and the correctness of the trial court's judgments therein hinges upon, the question of what rights and interests were conveyed by a certain instrument denominated "Royalty Deed" executed and delivered February 1, 1922, by John G. Miller and his wife, Theodocia Miller, owning two forty-acre tracts of land described therein, as grantors, to Walter Neustadt, as grantee. The land was already covered by an oil and gas lease dated February 16, 1921, that was not released until December 28, 1925.

The parties who were plaintiffs in both cases, and will hereinafter be referred to as such, deraign their title by mesne conveyances from Neustadt. In these actions, filed long after the release of the above-mentioned lease, and without any new or other lease of the land having been executed, plaintiffs sought to quiet their title to all of the mineral rights in one of the forties against the defendants, who in both actions are the executrices of the estates of the original fee owners and grantors, Mr. and Mrs. Miller, now deceased. Upon the trial of the causes, the trial court determined that the above-mentioned "Royalty Deed" executed by the Millers conveyed to Neustadt in perpetuity only an undivided one-eighth nonparticipating interest in said minerals. From said judgments, plaintiffs have appealed.

The body of the instrument in question reads as follows:

"Know All Men By These Presents: That, we John G. Miller and Theodocia E. Miller, husband and wife, of the County of El Paso and State of Texas, hereinafter called grantor (whether one or more) have granted, bargained, sold and conveyed, and by these presents, do grant, bargain, sell and convey unto Walter, Newstadt, hereinafter called grantee, whether one or more, all interest in and to all of the oil, petroleum, gas, coal, asphalt and all other minerals of every kind or character in and under and that may be produced from certain lands situated in the County of Carter and State of Oklahoma, and being

\* \* \* \* \* \*

"(Other lands not here involved.)

"The northeast Quarter of the southeast quarter and the northwest quarter of the northeast quarter of Section Twenty-nine (29) Township One (1) South, Range Three (3) West, containing eighty (80) acres and being same land described in deed from Department of Interior to Theodocia E. Miller recorded in Deed record in the County Clerks office in said County in Vol. 19, page 381 references to which is here made on both tracts together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for said minerals and removing the same therefrom, and with the right-of-way, easements and servitude for pipe lines, telephone and telegraph lines, for tanks, power houses, stations, gasoline plants and fixtures for producing, treating and caring for such products and housing and boarding employees and all other rights and privileges necessary, incident to or convenient for the economical operation of said lands for the production of said minerals, and the right of removing at any time all and any property and improvements placed or erected on the premises by the grantee or his assigns, including the right to pull all casing.

"It is understood, however, that this conveyance is made subject to any valid oil and gas lease now on the said premises, but covers and includes all interest in and to all of the oil royalty, gas rentals delay rentals, or royalty due and to be due under the terms of said lease but in the event the said lease for any reason becomes cancelled, forfeited or inoperative, then and in that event all of said minerals in and under said land, and that may be produced therefrom, and all of the money derived from the sale of same shall be owned jointly by the grantor and grantee herein, the grantor owning a seven-eighth (7/8th) working interest and the grantee owning a one-eighth (1/8th) royalty interest. (Emphasis ours).

"This sale is made for and in consideration of the sum of one dollar cash in hand paid and other valuable considerations the receipt of which is hereby acknowledged by the grantor.

"To Have And To Hold the above described property together with all and singular, the rights and appurtenances thereunto and in anywise belonging unto the said grantee, his heirs and assigns, forever free, clear and discharged of and from all former grants, taxes, judgments mortgages and other liens and excumbrances of what nature and kind soever and warrant the title to the same and we do hereby bind ourselves, heirs, executors, administrators, to Warrant and forever defend all and singular, the title to same unto the said Walter Neustadt, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof. Witness, our hand at El Paso Texas this 1st day of February 1922."

█ The rule to be followed, in cases of this kind, was clearly stated in the case of Sullivan v. Gray, 182 Okl. 487, 78 P.2d 688, and reiterated in the recent case of

Iskian v. Consolidated Gas Utilities Co., 207 Okl. 615, 251 P.2d 1073, as follows:

"The intention of the parties must be deduced from the entire agreement, and every provision must be construed so as to be consistent with every other provision if possible, and that construction adopted which gives effect to every part of the contract."

■ That the instrument is labeled "Royalty Deed" has no bearing upon the intention of the parties, expressed in the body of the instrument. As was said by the Kansas Court in the case of Rutland Sav. Bank of Rutland v. Steele, 155 Kan. 667, 127 P.2d 471, 472, "The terms of an instrument and not its name determine its nature and character."

■ In support of their position, plaintiffs say that the recital in the emphasized paragraph of the above-quoted deed is repugnant to the first or "granting" clause which conveyed all of the minerals to Neustadt and under the rules of construction properly applicable to such a deed, it must be held void and of no effect, citing Reed v. Whitney, 197 Okl. 199, 169 P.2d 187, and 16 Am.Jur. Sec. 241, p. 575. In the cited case this court referred to rules that the habendum clause of an instrument of conveyance cannot be used to enlarge the estate described in the granting clause and that the covenants therein merely refer to the interest of the grantor, and its application is limited thereto. However, plaintiffs are incorrect in arguing that a reservation cannot be inserted in a deed following the granting or conveying clause (such as in the habendum clause) to diminish the interest or estate first described. The old or "ancient" rule was that such reservation was repugnant to the grant and was therefore a nullity, but the better and more modern rule is the one followed in Westcott v. Bozarth, 202 Okl. 149, 211 P.2d 258, and quoted from Breidenthal v. Grooms, 161 Okl. 74, 17 P.2d 688, as follows:

"Where the intention of the parties is clearly expressed by an explanatory clause incorporated in the habendum clause, or in a separate clause, the latter may control over the granting clause of the deed."

See other authorities cited and discussed in First Nat. Bank & Trust Co. of Tulsa v. Price, 204 Okl. 243, 228 P.2d 623, and the Annotations, 131 A.L.R. 1239 and 157 A.L.R. 485.

■ But plaintiffs contend that the intention of the parties to this deed is not clearly expressed in the clause in question. They quote the latter part thereof, to wit:

"* * * *the grantor owning a seven-eighths (⅞ths) working interest and the grantee owning a one-eighth (⅛th) royalty interest.*"

and say: "Until this point is reached, the language of the deed is entirely clear, but the quoted and italicized phrase is far from clear." They argue that the use of the terms "royalty" and "seven-eights (⅞ths) working interest" presupposes that the property is under lease and they point to the allegedly inconsistent provision that all of the minerals in and under and that may be produced from the land (described in the deed) and all of the money derived from the sale of same, shall be owned jointly by the grantor and grantee in such proportions (only) "in the event the said lease for any reason becomes cancelled, forfeited or inoperative * * *." In support of their argument they cite the definition of the words "royalty" and "working interest" as used in their strict or technical sense, Rutland Savings Bank v. Steele, supra, Burns v. Bastien, 174 Okl. 40, 50 P.2d 377, Illinois Nat. Oil & Gas Co. v. Sinclair, 373 Ill. 581, 27 N.E.2d 450, and Summers On Oil & Gas, Secs. 581, 588 and 164, and infer that it is inconceivable that such terms (inapplicable as they ordinarily are to unleased land) were intended to describe the entire estates or interests the parties were to have after the lease then in effect should become "inoperative." This Court considered a similar argument in Burns v. Bastien, supra, and recognized that the term "royalty" in its strict sense means merely that portion of the production, or the proceeds thereof, reserved to a lessor in consideration of executing an oil and

gas lease, but we also there recognized and cited authorities to show that a reservation of "royalty" is a reservation of the benefits of the oil that may be found on the land and is not infrequently used to denote a mineral interest in perpetuity. In that case we demonstrated that the matter must be governed by the intention of the parties and held that the reservation of a ¾ interest in the "royalty of oil and gas" was a reservation of a ¾ interest in the minerals. In dealing with the same subject in Melton v. Sneed, 188 Okl. 388, 109 P.2d 509, 512, this court said:

> "4. Plaintiffs next assert that the trial court made a new contract between the parties when it held a conveyance of royalty to be a conveyance of mineral rights under their lands, and that this was in excess of the power of the court. This contention is based upon the strict construction of the word 'royalty'. Carroll v. Bowen, 180 Okl. 215, 68 P.2d 773. But upon examination of the conveyance it is readily apparent that the word was not used in its strict sense, but in the broader sense referred to in 3 Summers Oil & Gas, Perm. Ed., § 599, as denoting an interest in the minerals. That the word is frequently used in this State to denote an interest in the mineral rights is a matter of common knowledge. The conveyance in question here employed it in that sense."

As to the above and related subjects see Annotations, 146 A.L.R. 880, and especially page 899. As shown on page 494 of the Annotations, 4 A.L.R.2d 492, the Court, in Mabee Oil & Gas Co. v. Hudson, 10 Cir., 156 F.2d 450, 453, noted that the word "royalty" is "quite generally used by the oil fraternity in Oklahoma in the sense of being an interest in the minerals themselves", and as signifying "an interest in mineral rights, * * *." And the cases cited in the Annotations, supra, clearly demonstrate that such use of the term is not confined to this State. For instance in Neel v. Rudman, 160 Fla. 36, 33 So.2d 234, 237, it was said:

> "It must be borne in mind that a conveyance of a royalty interest and the conveyance of minerals in place are two entirely different documents and convey entirely different interests, but that to the average man * * * they appear so much alike as for one to be easily substituted for the other."

Plaintiffs' counsel cite no direct evidence that the term "one-eighth (⅛th) royalty" as used in the phrase under consideration was not intended to mean an undivided ⅛th interest in perpetuity in the minerals and in view of the wide use and common acceptance of that meaning above demonstrated, we must hold that it was here so used, correctly expressing the intention of the parties; and that the clause containing it thus operated to modify and reduce the grant accordingly under the hereinbefore quoted rule. The use of the term "working interest" in this phrase in no way detracts from the correctness of this conclusion. Many of the same things that have been said concerning the loose and inaccurate use of the term "royalty" could also be said of the use of that term. Thus, though the true meaning of "working interest" really and technically includes several things, it is often used to denote merely an interest in the mineral rights. According to the rule applied by many courts, including our own, the insertion of such a fraction in the conveyance defining the precise portion of the production referred to, is one of the most significant indices of the intent of the parties. And where the conveyance has specified the proportionate interests in royalty or mineral rights to be held by the grantor and grantee, respectively, and contains other provisions similar to those contained in the present deed, it has usually been held to convey no more than the portion of the mineral rights denoted by the fractions used. See, for instance, Paschall v. Royalties, Inc., 198 Okl. 646, 181 P.2d 558, and for examples of similar wording, see: Porter v. Shaw, Tex.Civ.App., 12 S.W.2d 595; Snodgrass v. Koen, 82 W.Va. 337, 96 S.E. 606, and other cases cited in the Annotations, 4 A.L.R.2d 492 et seq. Rath-

er than creating an ambiguity, we think the use of the term "seven-eights (⅞ths) working interest" was altogether consistent with the "popular sense" in which the term "royalty" was used in the same paragraph. See Carroll v. Bowen, 180 Okl. 215, 68 P.2d 773, the term unequivocally implies the right to "work", or do the things necessary to producing, the lease, and helps distinguish such an interest from one which does not carry with it that right, such as that "ordinarily left" after a lease has been sold and the bonus collected, or, in other words, with no right to participate in the "mineral rights" so leased further than to receive free of cost a ⅛ of the oil produced therefrom. This is the meaning of the word "royalty" when "construed in its popular sense," as shown in the Carroll case, supra, and is the sense in which the trial court found it was used here. In that case we held that such an interest is non-participating. In other words that it does not "include the right to bonus and delay rentals unless so stipulated" and in this case, the parties' choice of the term "working interest" to distinguish the grantors' reserved royalty interest from the grantee's royalty interest, comports with that connotation or meaning, and is entirely consistent with the other provisions of the deed as a whole. We say this, despite the provision of the deed in question that "all money derived from the sale of same" (referring to "minerals") shall be owned jointly in proportions of ⅞ and ⅛, because as indicated in the Carroll case, bonuses and rentals are not sales of minerals.

In the Paschall case, supra, we said that the subsequent conduct of all the parties indicated that it was not their intention that the ¼ interest in the minerals expressly reserved to the grantors in the deed, should pass to the grantees, and, in Westcott v. Bozarth, supra, we expressed the opinion that neither the grantees nor subsequent transferees could have been mislead or deceived by the language used in the deed reserving ¹⁵⁄₁₆ of all minerals to the grantors. The only evidence or circumstance plaintiffs' counsel refer to, outside the language of the deed itself, to support their interpretation of its language, is the unexplained fact that the last survivor of the grantors therein died almost ten years after the expiration of the lease in effect when this deed was executed, without ever having again leased the land. We find no particular significance in this, without any indication in the record to support such a premise. The Millers' failure to re-lease the land might be explained by the absence of prospective lessees or any one or number of other reasons, having nothing to do with the quantum or character of their interest or their interpretation of the questioned deed or the particular paragraph thereof now under consideration. On the other hand, counsel for defendants point out that after obtaining the deed in question, Walter Neustadt and his successors in title, in subsequent conveyances of portions of their interests, recognized the Millers' reservation in the same words in which it was created, by executing deeds to their vendees or grantees containing the identical wording of the original reservation, including the term ⅞ working interest.

To us it seems clear that the purpose of the deed in question was to effect a conditional or "term" grant of the entire leased mineral rights only so long as the lease then in effect, subsisted, and that the only mineral interest it conveyed in perpetuity was a fractional one. The trial court was apparently of the same view.

In an equity case the judgment of the trial court carries with it the finding of all facts necessary to support it that could have been found from the evidence. Meyers v. Central Nat. Bank of Okmulgee, 183 Okl. 231, 80 P.2d 584; Burns v. Bastien, supra. As we have found in none of the arguments made against them, any particular in which such judgments in the present case are either contrary to law or clearly against the weight of the evidence, said judgments must be affirmed. It is so ordered.

HALLEY, C. J., and WELCH, CORN and WILLIAMS, JJ., concur.

JOHNSON, V. C. J., and ARNOLD and O'NEAL, JJ., dissent.