Maude E. KEENER, Myrtle E. Nowlin, Ernestine Miller Robertson, Elizabeth Lowry, Thos. W. Miller, and Ernestine Miller Robertson and John M. Briscoe, Jr., Trustees, Plaintiffs in Error,

v.

Walter NEUSTADT, Defendant in Error.

No. 37303.

Supreme Court of Oklahoma.

Nov. 27, 1956.

Otey, Johnson & Evans, Ardmore, for plaintiffs in error.

Dyer & Dyer, Ardmore, for defendant in error.

BLACKBIRD, Justice.

The action, out of which this appeal arose, was instituted by plaintiffs in error, as plaintiffs, against the defendant in error, as defendant, to quiet their title to a "royalty interest" in 150 acres of land in Section 27, Township 1 South, Range 3 West, Carter County, Oklahoma.

Plaintiffs in error, hereinafter referred to as plaintiffs, are sons, daughters, and a grandson, of John G. and Theodocia E. Miller, deceased, former residents of El Paso, Texas. They are residuary devisees, and a successor to a residuary devisee, of the estates of said deceased husband and wife, from whom they deraign their title, if any, to the mineral, or royalty, interest involved. Whether they have any such interest depends upon the proper construction, and effect, of a conveyance from the said Mr. and Mrs. Miller to the defendant in error, hereinafter referred to as defendant, several years before said grantors' respective deaths.

The conveyance was effected by two separate instruments, the latter of which was curative or corrective, executed and delivered by said grantors to defendant, as grantee, in February and June of 1922, respectively. At that time there were subsisting oil and gas leases on the entire 150 acres, except a 30-acre tract described as the W½ NW¼ SE¼ and the SW¼ SW¼ SW¼ of the aforesaid section. It was apparently with these leases in mind that the parties determined that in their transaction they would continue the division of the minerals under said land along the same lines as they were divided by the leases, i. e., a $7/8$ths "working" interest, and a $1/8$th royalty interest. In this respect both instruments were very similar to a conveyance involving other land, executed and delivered by the same grantors to the same grantee on February 1, 1922, which was involved, and is more fully described, in Colonial Royalties Co. v. Keener, Okl., 266 P.2d 467.

Here, as in the cited case, each instrument was termed a "Royalty Deed" and was comtcmplated to preserve the grantors' rights and title in the "working", or $7/8$ths, interest in the minerals, while conveying their rights and title in the remaining "royalty", or $1/8$th, interest. The principal difference between the realty here, and that in the cited case, is that, under the 150 acres involved here, the grantors owned only an undivided one-half interest in the minerals; while in the land involved there, it appears that they owned all of the minerals. In the first Deed, the one executed and delivered in February, this seems to have been overlooked, said deed referring to the realty involved as "*all* interest in and to all of the oil, petroleum, * * * (etc.)"; while in the correction deed subsequently executed and delivered in June, it was specifically recognized, by special wording written into it, that the grantors, John G. and Theodocia E. Miller "only owned an undivided one-half interest * * *". Omitting the formal parts, the latter Deed reads as follows:

"Know All Men By These Presents: That we, John G. Miller and Theodocia

E. Miller, husband and wife, of the County of El Paso, and State of Texas, hereinafter called grantor (whether one or more) have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto Walter Neustadt, hereinafter called grantee, (whether one or more) an undivided one-half (½) interest in and to all of the oil, petroleum, gas, coal, asphalt and all other minerals of every kind or character in and under, and that may be produced from certain lands situated in the County of Carter and State of Oklahoma, and being the

"West half of northeast quarter of southwest quarter; southeast quarter of northeast quarter of southwest quarter; north half of northwest quarter of southwest quarter; south half of southwest quarter of southwest quarter; southeast quarter of southwest quarter; west half of west half of southeast quarter of section twenty-seven (27) township one (1) south, range three (3) west of the Indian Meridian, containing one hundred fifty (150) acres more or less.

*"It is understood, however, that this conveyance is made subject to any valid oil and gas lease now on the said premises, but covers and includes the half (½) interest in the oil royalty, gas rentals, delay rentals, or royalty due and to be due under the terms of said lease, but in that event said lease, for any reason, becomes cancelled, forfeited, or inoperative, then and in that event one-half (½) of said minerals in and under said land, and that may be produced, therefrom and one-half (½) of all the money derived from the sale of same shall be owned jointly by the grantor and grantee herein, the grantor ow̲ing one half (½) of the seven-eighths (⅞) or seven-sixteenths (⅞₆) interest and the grantee owning one-half (½) of one-eighth (⅛) or one-sixteenth (⅟₁₆) royalty interest.*

"It is further understood that this conveyance is made as a substitute for the royalty deed given by the grantors to the grantee on the 12th day of February, 1922, and recorded in the office of the County Clerk of Carter County, Oklahoma, in Book D–52, page 149, for the reason that said conveyance did not clearly express the intention of the parties hereto; it being the understanding and agreement between said parties that the grantors, herein; John G. Miller and Theodocia E. Miller, *only owned an undivided one-half interest in the land* and they were selling to the grantee, Walter Neustadt their undivided one-half interest in the minerals, *subject to* the existing leases and *the above and foregoing provisions* in case the existing leases should become cancelled, forfeited or inoperative.

"To Have And To Hold the above described property, together with all and singular, the rights and appurtenances thereunto and in anywise belonging unto the said grantee, his heirs and assigns forever, free, clear, and discharged of and from all former grants, taxes, judgments, mortgages, and other liens and encumbrances of what nature and kind soever, and warrant the title to the same, and we do hereby bind ourselves, heirs, executors and administrators to warrant and forever defend all and singular, the title, to the same unto the said Walter Neustadt, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof." (Emphasis ours.)

At the close of the trial, the trial judge determined that, as to the 30 acres not covered by oil and gas leases at the time of the execution and delivery of the above-quoted "Royalty Deed", and which he referred to in his judgment as Tract I, said deed vested in the defendant all of the grantors' undivided one-half of the minerals. The judgment accordingly quieted

defendant's title to that. As to the remaining 120 acres referred to therein as Tract II, which was under lease at the time of said conveyance, the trial court's judgment determined that the same "Royalty Deed" conveyed only a 1/16th "royalty interest", leaving the remaining 7/8ths of the undivided one-half, or a 7/16ths, mineral interest, in the grantors. The judgment accordingly quieted defendant's title to said 1/16th royalty interest and plaintiffs' title to said 7/16ths mineral interest in said 120 acres. From the first part of said judgment involving the 30 acres, or Tract I, plaintiffs appeal, and from the last part involving the 120 acres, or Tract II, defendant cross-appeals.

 In their appeal, plaintiffs contend that our opinion in Colonial Royalties Co. v. Keener, supra, is conclusive as to the proper interpretation of the above-quoted "Royalty Deed". They point out that upon application of the principles there applied, such a Deed conveyed only a 1/16th nonparticipating royalty interest. On the other hand, defendant argues that portions of the Deed following the granting clause, which he says purported to convey to him *all* of the grantors' undivided *one-half* interest *in the minerals* under the lands involved, render said instrument ambiguous, as a whole. He further says that in view of such ambiguity, the trial judge properly went beyond the four corners of the instrument, and, to ascertain the intention of the parties thereto, resorted to, and relied upon, extraneous evidence showing that before the grantors' deaths, defendant had gone upon Tract I and drilled a producing well and had received from the company purchasing the oil produced from it, a full one-half of the proceeds of said production. Other such evidence pointed to, revealed that, after the grantors' deaths, no interest in any of the 150 acres involved herein was specifically mentioned or described in the decrees of distribution entered in the administration proceedings covering their estates.

We think the trial court erred in placing any reliance upon such evidence and thus allowing the terms of a written conveyance of realty to be varied thereby; for, in our opinion, said conveyance is not ambiguous. We do not think that the portion of the "Royalty Deed" immediately following the granting clause is repugnant to the grant specified in the granting clause, but that it is merely explanatory of it. The Deed, on its face, shows that the "undivided one-half (½) interest in and to all of the oil * * * (etc.)" referred to in the granting clause was intended to mean only an undivided one-half portion of the grantors' one-eighth, or royalty, interest, rather than their entire one-half interest in the minerals. We demonstrated in Colonial Royalties Co. v. Keener, supra, that the insertion of such language in a deed, under the rules applied by this court, effectively limits, defines or circumscribes a larger fractional interest appearing in the granting clause. Nor do we think that, under the proper interpretation of the language of the deed, it was material, as to the quantum of the royalty interest therein conveyed, whether one particular tract, such as the 30-acre one of the 150-acre total involved, was then unleased or was covered by a lease that would subsequently expire. The only distinction that the deed itself made between leased and unleased tracts was contained in the provision entitling the grantee to his proportionate part of any "gas rentals" and "delay rentals" due or to become due under the oil and gas leases then existing on the majority of the 150 acres.

 In view of the foregoing, we hold that the defendant owns (under the conveyance involved herein) only an undivided one-sixteenth royalty interest in the entire 150 acres; and, to the extent that the trial court quieted the title contrarywise, he erred. The judgment appealed from is therefore affirmed as to the acreage referred to therein as Tract II, and reversed as to that referred to as Tract I; and the trial court is directed to vacate said judg-

ment as to the latter tract, and enter judgment in accord with the views herein expressed.

WILLIAMS, V. C. J., and CORN, HALLEY, JACKSON and CARLILE, JJ., concur.