## SMITH, Trustee, v. FIRST NAT. BANK OF CHANDLER.

No. 12473—Opinion Filed May 18, 1926.

(Syllabus.)

**1. Contracts—Construction—Rule of Ejusdem Generis.**

By the application of the rule "ejusdem generis" in construing a contract, general words following words of particular description are limited in meaning to the scope of the particular words. A written contract, which by its terms releases the contractor of liability for damages to bank furnishings while in storage pending installation, caused by reason of the dampness "or other unfavorable conditions" of the building or premises in which the fixtures may be stored, will relieve the contractor only for loss resulting from dampness and kindred causes, but not for loss caused by fire.

**2. Evidence — Extrinsic Evidence Inadmissible to Vary Unambiguous Contract.**

Where a contract is in writing and its

terms and conditions are clear and unambiguous, the intent of the parties must be determined from the writing as a whole, and extrinsic evidence is not admissible to vary, alter, change, or modify it.

### 3. Contracts — Construction for Court Where Writing Unambiguous.

The construction of a written contract, the terms and conditions of which are clear and unambiguous, is a question of law to be determined by the court.

### 4. Same — Breach of Contract to Install Bank Fixtures After Part Performance —Measure of Damages.

A bank supply company entered into a contract with a bank to furnish and install bank fixtures according to plans and specifications, and was to receive therefor the sum of $3,075, and after certain materials had been furnished and part of the labor performed on the contract, the supply company abandoned the work and so notified the bank, which accepted the work done and materials furnished, and completed the work at its own expense. Held, the measure of damages for the breach of said contract is the difference between the cost of completion of the work and the contract price less the reasonable value of the work and materials supplied by the supply company, plus any advance made to said company.

Error from District Court, Lincoln County; Edward Dewes Oldfield, Assigned Judge.

Action by First National Bank of Chandler, Okla., against the Western Bank Supply Company, a corporation. Judgment for plaintiff, and defendant appeals. Pending appeal, the action was revived in the name of A. L. Smith, trustee in bankruptcy. Affirmed.

Homer N. Boardman, for plaintiff in error.

Rittenhouse & Rittenhouse and F. E. Lee, for defendant in error.

MASON, J. The defendant in error, First National Bank of Chandler, Okla., instituted this action against the Western Bank Supply Company, a corporation, to recover damages for the breach of a written contract, and pending the appeal the plaintiff in error, defendant below, was adjudged bankrupt and A. L. Smith was appointed trustee and this action was revived in his name. The parties will be referred to herein as they appeared in the trial court.

By the terms of said contract, which was entered into between the parties hereto on July 11, 1919, the defendant agreed to manufacture, furnish, deliver, and install certain bank fixtures in the banking house of the defendant in error, at Chandler, Okla.

The contract provided, in substance, as follows: First. That said fixtures were to be manufactured and installed according to plans and specifications which were attached to said contract. Second. The same to be completed within 70 days from acceptance of the contract by the defendant. Third. For a consideration of $3,075, which was to be paid when the contract was performed by the defendant. Fourth. The defendant was to be relieved of delay growing out of strikes or unavoidable conditions, and have additional time equal to the number of days lost. Fifth. The plaintiff should furnish free of charge ample storage space for the fixtures used in the completion of the contract, either in the banking house or a warehouse convenient to the place of construction. Sixth. The contract was approved and accepted on July 11, 1919.

The fixtures were not installed by the defendant due to a fire which destroyed them on March 1, 1920, while stored pending installation, and on August 24, 1920, this action was commenced by the plaintiff to recover $2,917.70, as damages for breach of said contract.

The plaintiff alleged the execution of the contract and a subsequent agreement extending the time for installation of the fixtures until the spring of 1920, and also alleged a payment on the contract of $2,000, on December 15, 1919; and further alleged that defendant failed, neglected, and refused to carry out said contract and that the defendant advised the plaintiff, on March 23, 1920, that by reason of the increased cost of materials it had discontinued its fixture department. Plaintiff then alleged that it was required to and did enter into a contract with the Whitcomb Cabinet Company for the furnishing and installation of said fixtures, and that plaintiff was damaged in the sum of $2,917.70, and prayed judgment for that amount.

The defendant answered by general denial and filed its counterclaim for $888.20, alleging that the contract of July 11, 1919, had been modified and changed from a "building and construction contract" to a "purchase and sale contract," and attached copies of correspondence upon which it relied.

Plaintiff filed its reply, after which the case was submitted to a jury on the issues thus joined, and at the close of the plaintiff's evidence the defendant interposed its de-

murrer thereto, which was overruled. after which the defendant rested and moved for an instructed verdict, which was also overruled. Verdict was for the plaintiff in the sum of $2,876.72, upon which the court rendered judgment, and the defendant has duly perfected its appeal to this court.

For reversal. it is first contended that the trial court erred in overruling defendant's demurrer and in refusing to instruct a verdict in its favor. In support of this contention, the defendant insists that under the terms of the contract the defendant was not liable for loss of fixtures while stored. caused by dampness "or other unfavorable conditions"; it being contended that the phrase "or other unfavorable conditions" is broad enough to cover loss by said fire. The section of the contract involved is as follows:

"The party of the first part shall not be responsible for any damages to the furniture or material furnished in this agreement caused by dampness, or other unfavorable conditions of the building or premises in which said furniture or material is to be installed or in which it may be stored pending installation."

It will not be questioned, we take it, but what this clause releases the defendant from damages resulting to said fixtures caused by dampness of the building in which the fixtures were stored pending installation. But what is the meaning of the phrase "or other unfavorable conditions"? This phrase, standing alone, is broad enough to cover any condition that might result in damage or loss to said fixtures. If the phrase were given the meaning it would carry when standing alone, the defendant would be correct in its contention, but we cannot consider it as standing alone. but we cannot consider its scope and meaning in the light of the preceding particular phrase. By the application of the rule of "ejusdem generis," in construing the meaning of general words following words of particular description, the general words are limited in meaning to the scope of the meaning of the particular words. By this rule, the phrase "or other unfavorable conditions" does not include a loss by fire, but it is limited in its meaning to damage resulting to said fixtures by dampness or kindred causes. Hoffman v. Eastern Wis. Ry. & Light Co. (Wis.) 115 N. W 383: Board of Commissioners of Kingfisher County v. Grimes, 75 Okla. 219 182 Pac. 897; Wolf v. Blackwell Oil & Gas Co., 77 Okla. 81. 186 Pac. 484; Hickman et al. v. Cabot, 183 Fed. 747; Board of Commerce of Ann Arbor. Mich., v. Security Trust Co, 225

Fed. 454; Hawkins v. G. W. Ry. Co., 17 Mich. 56; American Bridge Company of N. Y. v. Glenmore Co. (Ky.) 107 S. W. 279; Krulewitch v. National Imp. & Trad. Co., 186 N. Y. Supp. 838; Standard Ice Co. v. Lynchburg Diamond Ice Factory Co. (Va.) 106 S. E. 390.

This conclusion is supported by the contract, which appears in the case-made herein. Section 8 of the contract, as originally drafted, requires the First National Bank to insure the fixtures against fire, but this section appears to have been stricken out by having a pen drawn through it before the parties signed the contract.

Counsel for defendant next contend that the original contract was modified by the subsequent acts and correspondence of the parties so as to change it from a "building and construction contract" to a "purchase and sale contract."

It appears that the installation of the fixtures was delayed from time to time by strikes and conditions covered by the contract until the busy banking season of the fall, when they were ready to be shipped to Chandler, but, owing to the rush of business in the bank, the parties agreed to postpone the installation until spring. the bank agreeing to pay $2,000 of the consideration when the fixtures reached Chandler, and to store them free of charge. It also appears that when the fixtures, which were being manufactured by another for the defendant company, were ready to be shipped, the defendant wrote the bank and suggested that they be shipped direct to the bank at Chandler, in order to save making a second shipment from the defendant's place of business in Oklahoma City. The fixtures were subsequently shipped to the bank, at Chandler, and stored by it in the place where they were destroyed by fire. The bank also paid $2,000 of the consideration.

The defendant contends that these acts were sufficient to modify the contract so as to create a purchase and sale contract, and that the title to said fixtures passed to the plaintiff when it received them and paid the $2.000 on the consideration.

We see no merit in such contention, for the reason that section 7 of the original contract made it the duty of the plaintiff to furnish the defendant, free of cost, storage for the fixtures pending their installation. It is true that by said correspondence the time of installation of the fixtures was extended until the spring of 1920, and the time and manner of payment as set forth in the contract were changed, but such changes did

not change or modify the general nature of the contract by which the defendant agreed to manufacture, furnish, and install said fixtures in the plaintiff bank. The general terms and nature of the contract remained the same though the time of its completion was passed to a future date and the plaintiff advanced a part of the contract price.

It is a fundamental rule in the interpretation of contracts that where a contract is in writing and its terms and conditions are clear and unambiguous, the intent of the parties must be determined from the writing as a whole, and extrinsic evidence is not admissible to vary, alter, change, or modify it.

The contract under consideration falls within the above rule, and the construction thereof was a question of law to be determined by the court. Rider v. Morgan, 31 Okla. 98, 119 Pac. 958.

In our opinion it was clearly a building and construction contract and its general nature was not modified by the change in the time of performance and the manner of payment. Therefore, the failure of the defendant to perform its part thereof rendered it liable in damages to the plaintiff. We are of the opinion that the trial court properly overruled the defendant's demurrer to the plaintiff's evidence and its motion for an instructed verdict.

It is next urged that the trial court erred in defining the measure of damages.

In Eckes v. Luce et al., 70 Okla. 67, 173 Pac. 219, this court, in considering the measure of damages in a case almost identical to the one at bar, held:

"A building contractor who entered into a contract with the owner to furnish material and labor and to remove the old and build in a new front in a storeroom according to plans and specifications and was to receive therefor the sum of $725, and after certain materials had been furnished and part of the labor performed on the contract, the contractor abandoned the work, the owner accepted the work done and materials furnished, completed the work at his own expense. Held, the contractor is entitled to recover for the work done and materials furnished according to the contract price, in proportion that the same bears to the completed work, less the damages sustained by the owner by reason of the contractor's failure to complete the work."

The instruction defining the measure of damages in the instant case is in complete accord with the rule above announced.

Finding no reversible error, the judgment of the trial court is affirmed.

NICHOLSON, C. J., BRANSON, V. C. J., and PHELPS, LESTER, and RILEY, JJ., concur.