MEEKS v. HARMON et al.

No. 34502.   Oct. 7, 1952.

Rehearing Denied Nov. 18, 1952.

*250 P. 2d 203.*

Goins & Smith, Ardmore, for plaintiff in error.

Champion, Fischl & Champion, Ardmore, for defendants in error.

O'NEAL, J. On January 8, 1919, Beaulah Spencer, an unrestricted Freedman, the owner of a tract of land under a patent from the Choctaw and Chickasaw Nations, executed an "unless" oil and gas lease on lands situated in Carter county, Oklahoma, to J. C. Luster and J. E. Morris. The lease ran for a period of five years and as long thereafter as oil and gas or either of them is produced from the land described. The lease provided for the customary 1/8 royalty of oil and gas produced and saved from the lease premises. On the same day she executed and delivered to J. C. Luster and J. E. Morris an instrument in writing designated "Assignment of Royalties on Oil and Gas." Subsequent to the execution of the instruments referred to, Beaulah Spencer, on August 9, 1922, conveyed the land by warranty deed to Ardil C. Meeks. Meeks thereafter conveyed the land, by warranty deed, reserving however, unto himself all minerals and all oil and gas rights. The defendants 'in the present action hold under mesne conveyances and became the owners of whatever interest was conveyed by the assignment designated "Assignment of Royalties on Oil and Gas."

For convenience we will refer to Ardil C. Meeks as plaintiff and Carl E. Harmon, and others, as defendants.

The action of plaintiff was brought for the purpose of quieting title in him to all mineral rights in and under 20 acres of land described as a portion of the W.½ of the N.W.¼ of the S.E.¼ of section 20, township 1 south, range 2 west, Carter county, Oklahoma, subject, however, to a nonparticipating royalty interest owned by the defendant Carl E. Harmon, in the amount of an undivided 1/3 of 1/8 royalty interest, and the ownership by the defendants, Levi Roush, Gus Roush, Sr., and Mary Roush Sebolt, of an undivided 1/9 of 1/8 each royalty interest in the oil and gas produced from the land in question.

The defendants Mary Roush Sebolt and Tom Sebolt failed to file answers and were in default on the day of trial. The defendants Gus Roush, Sr., and Exa Mae Roush filed answers admitting the allegations of plaintiff's petition and prayed the court to quiet title in them to an undivided 1/9 royalty interest in the oil and gas produced and saved from said land.

All other defendants filed answers and cross-petitions alleging ownership of an undivided interest in all the minerals and mineral rights in and under the land and prayed that their titles be quieted in them.

The trial court rendered judgment in favor of the plaintiff and defendants finding that each named party was the owner of a full undivided interest in the land in the following proportions, to wit:

Ardil C. Meeks
_____ Undivided 1/3 interest,
Carl E. Harmon
_____ _____ Undivided 1/3 interest,
Levi Roush
_____ Undivided 1/9 interest,
Gus Roush, Sr.
_____ _____ Undivided 1/9 interest,
Mary Roush Sebolt
_____ Undivided 1/9 interest,

and that each of said named defendants are entitled to participate in the bonus money of any oil and gas lease to be executed and entitled to share in the delay rentals in the proportion as shown by their interest above.

Both plaintiff and defendants relied solely upon the language contained in the writing referred to as "Assignment of Royalties on Oil and Gas."

No contention is made that the instrument is ambiguous and no evidence was offered to show the intention of the parties other than expressed in the writing itself.

If the instrument conveys a mineral interest the judgment below must be affirmed. If a royalty interest, it must be reversed. The instrument reads:

"Assignment of Royalties on Oil and Gas.

"Know All Men by These Presents that Beaulah Spencer, a single Woman, party of the first part; for and in consideration of the sum of One Hundred and Twenty Dollars, cash to her in hand paid by J. C. Luster and J. E. Morris, parties of the second part, the receipt of which is hereby acknowledged, have bargained and sold, and by these presents do grant, bargain, sell, transfer, convey and assign unto said J. C. Luster and J. E. Morris, parties of the second part, their heirs and assigns, the undivided Two Third (2/3) of all royalties, rights and interests reserved to said party of the first part by the terms of that certain oil and gas lease upon the following described real estate, lying and situate in Carter County, State of Oklahoma, to-wit:

"W½ of the NW¼ of the SE¼ and the NE¼ of the NW¼ of the SE¼ of Section 20, Twp one South and Range 2 West (I. R. can. $.50 BS 1-8-19)

which said oil and gas lease bears date the 8 day of January, 1919, and was made, executed and delivered by said parties of the first part to J. C. Luster and J. E. Morris and is duly recorded in Book Misc. 39, at Page 257 of the records of the Co. Clerk of Carter County, State of Oklahoma, and said

party of the first part do hereby sell, assign, transfer and set over unto said parties of the second part, the undivided Two Third (2/3) of all the rights and interest of said party of the first part in and to and under said oil and gas lease, in-so-far as it affects the real estate above described.

"And for and in consideration of the sum above set out, said party of the first part do (sic) hereby grant, bargain, sell, convey, transfer and assign to said parties of the second, their heirs and assigns, the 2/3 Two Thirds of all royalties on oil, gas and other minerals, produced and saved from said real estate at any time, whether under the terms and conditions of the above mentioned lease, or under the terms and conditions of any other subsequent lease made by said party of the first part, or her heirs or assigns, to any person or persons whomsoever, this covenant and transfer to run with the land, and to be binding upon the parties hereto, their heirs and assigns, and upon any and all leases or lessees, present or subsequent.

"To Have and To Hold said royalties hereby sold, unto said parties of the second part, their heirs and assigns forever.

"In Witness Whereof, said party of the first part has hereto set her hand on this 8 day of January, A.D., 1919.
"(Signed)    Beaulah Spencer"

In support of the judgment rendered defendants rely on our decisions in Wilson v. Olsen, 167 Okla. 527, 30 P. 2d 710; Myers v. Central Nat. Bank, 183 Okla. 231, 80 P. 2d 584; Burns v. Bastien, 174 Okla. 40, 50 P. 2d 377; and Melton v. Sneed, 188 Okla. 388, 109 P. 2d 509.

Under our view of the case the quoted decisions are not decisive of the present case for reasons which we shall note.

In Wilson v. Olsen, supra, the deed was not made subject to an existing oil and gas lease. Moreover, the trial court permitted the parties to testify as to the meaning of the words employed and the interest they intended to convey. This evidence was admitted upon the theory that the deed was imperfectly

drawn and the language therein contained was ambiguous. In that case we said:

"A court of equity will look at the real object of a deed and the intention of the parties, and will compel the fulfillment of both, and, if possible, the intention of the grantor will be gathered from the whole instrument. If the intention of the parties to the deed is plain, parol evidence is not admissible to prove an intention different from the terms of the deed, but where a deed possesses an element of uncertainty, parol evidence, the admission of the parties, and other extraneous circumstances may be proved to ascertain its true meaning."

In Myers v. Central Nat. Bank, supra, the case discloses that a general warranty deed conveyed the land described. The conveying clause reads:

"And an undivided one-half interest in and to the oil and gas royalty rights in the land."

Although there was an existing oil and gas lease on the land, the deed did not refer to the lease as the lease had expired by its own terms without oil or gas development. Construing the deed we held that it was the intention of the parties to convey a full mineral interest interpreting the word "royalty," in its broader meaning.

In Burns v. Bastien, supra, the warranty deed reserved an undivided three-fourths interest in and to all the royalties of oil and gas under and pertaining to said premises, which said reservation of royalty shall belong to Bastien. The record does not disclose whether there was an existing oil and gas lease upon the land. We indulge the presumption that no lease existed as no mention is made of any oil or gas lease upon the property. We, therefore, held, as applied to these facts, the following:

"Where a conveyance was made reserving a three-fourths interest in the 'royalty of oil and gas,' and where it is not shown whether or not there was an oil and gas lease on the property

at the time, held, that the reservation was of the oil and gas rights and was valid, and operated to except from the grant the right to such minerals, and the right to go upon the land and prospect for and take the oil and gas, although no specific right of ingress or egress was reserved."

It will be noted that the decision is based upon the oral testimony of the parties as to the intent and purpose of the transaction there involved, and our decision is based upon the cardinal rule of construction that a conveyance must be so construed as to give effect to the intention of the parties when that intention can be ascertained.

In Melton v. Sneed, supra, the deed of conveyance was held to be ambiguous and oral evidence was permissible to prove the meaning and intent of the instrument. In that case the court permitted all parties to testify as to the intent of the language used and thereupon held that:

"Where a deed conveyed, in perpetuity, 'one third of all royalties from oil, gas, or other minerals, arising from or out of or produced upon' the lands described, and did not refer to any lease then existing on such land, the deed was ambiguous, and the trial court properly permitted the introduction of evidence to ascertain the intent of the parties, and gave to such language the meaning which the parties intended, and held the instrument a grant of the mineral rather than a conveyance of the royalties only."

In defendants' supplemental brief they stress the legal effect of our recent decision in Conner v. Frickenschmidt, 205 Okla. 230, 236 P. 2d 674. That case is distinguishable upon factual grounds. The deed there provided that the grantor for himself, his heirs and assigns hereby sells, assigns, transfers, grants, bargains and conveys to second party, an undivided one-half interest in and to his right, title and interest in and to all of the one-eighth interest in the oil and gas in and under the premises. The land was producing oil and gas upon the date of the above assignment, but

the original lease had expired and the contention was advanced that the grantee's rights in production ceased with the expiration of the lease. We denied that contention and held that the mineral deed which is a conveyance of a royalty did not terminate with the existing lease.

It will be observed that the cited cases deal with reservations in conveyances and conveyances of minerals not encumbered by existing oil and gas leases. These decisions, and others that might be noted, classically illustrate our pronouncements that every case must be approached for a concrete solution upon its individual facts. Absence of fraud or mutual mistake and no claim of ambiguity made, we must look to the four corners of the instrument and from it alone weigh the quantity and quality of the conveyance.

Although we have delineated the distinguishing characteristics of a royalty from a mineral interest, these terms by the unskilled conveyancer are frequently loosely employed. The term, however, employed must not be lifted out of its context, nor need it be given a strict or liberal construction to meet the exigencies of partisan interest.

From a casual reading of the conveyance in question, we are lead to the inevitable conclusion that the trial judge erred in his conclusion of law in declaring the instrument vested a perpetual mineral interest in the defendants.

An examination of the instrument designated "Assignment of Royalties on Oil and Gas," under which instrument defendants' title depends, discloses that in the first grammatical paragraph, Beaulah Spencer conveyed to J. C. Luster and J. E. Morris, their heirs and assigns, the undivided two-thirds (2/3) of all royalties, rights and interest reserved to said Beaulah Spencer by the terms of that certain oil and gas lease upon the land described.

In the second grammatical paragraph of the instrument, Beaulah Spencer states that the oil and gas lease above referred to bears date the 8th day of January, 1919, and that she assigns and conveys unto J. C. Luster and J. E. Morris, the undivided two-third (2/3) of all the rights and interest of the grantor in and under said oil and gas lease, insofar as it affects the real estate described.

In the third grammatical paragraph of the instrument, Beaulah Spencer assigns and conveys to J. C. Luster and J. E. Morris, their heirs and assigns, the two-thirds (2/3) of all royalties on oil, gas and other minerals, produced and saved from said real estate at any time, whether under the terms and conditions of the above mentioned lease, or under the terms and conditions of any other subsequent lease made by said grantor, her heirs or assigns.

In the latter paragraph it is observed that the interest conveyed is not limited to the present oil and gas lease upon the land, but is extended to "the terms and conditions of any other subsequent lease made by said grantor upon the land."

We conclude that Beaulah Spencer, as the grantor, did not intend to use the word "royalty" in its broader sense to include the right of exploration and development, but used it with the purpose and intent to convey the two-thirds (2/3) interest she reserved under the oil and gas lease, or any future lease covering 1/8 of the oil and gas produced and saved from the land.

In the case of Carroll v. Bowen, 180 Okla. 215, 68 P. 2d 773, we said:

"The term 'royalty' in the strict sense is held to mean a share of the product or proceeds therefrom, reserved to the owner for permitting another to use the property."

The distinguishing characteristics of a mineral right and a royalty right are aptly referred to in our decisions in Sykes v. Austin, 182 Okla. 299, 77 P. 2d

719, and in Pease v. Dolezal, 206 Okla. 696, 246 P. 2d 757.

We have uniformly held that the language of a written contract, the terms of which are clear and unambiguous, governs the right and obligations of the contracting parties. Stratton v. Shaffer Oil & Refining Co., 103 Okla. 28, 228 P. 772; Smith, Trustee, v. First Nat. Bank of Chandler, 114 Okla. 293, 245 P. 653, and Lee v. National Refining Co. et al., 181 Okla. 556, 75 P. 2d 406.

In the latter case we said:

"Where a written contract is complete in itself, and viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended, and the intention of the parties cannot be determined from the surrounding circumstances, but must be gathered solely from the words used."

In Sullivan v. Gray, 182 Okla. 487, 78 P. 2d 688, we said:

"The intention of the parties must be deduced from the entire agreement, and every provision must be construed so as to be consistent with every other provision if possible, and that construction adopted which gives effect to every part of the contract."

The judgment of the trial court is reversed, with instructions to enter judgment for the plaintiff, quieting his title in the land, subject to a non-participating royalty interest of the defendants in the proportions as provided for in the decree of the trial court. Said nonparticipating royalty interest of the defendants to apply to any existing oil and gas lease, as well as to any other oil and gas lease that Beaulah Spencer, her heirs or assigns, might execute.

HALLEY, V.C.J., and WELCH, DAVISON, and BINGAMAN, JJ., concur. GIBSON, J., dissents.