Susie HARTNESS, sometimes known as Mrs. Lige Hartness or Mrs. Elige Hartness, Plaintiff in Error,

v.

F. S. YOUNG and Vincent Grindle, and John F. Pendleton, Defendants in Error.

No. 37027.

Supreme Court of Oklahoma.

Feb. 14, 1956.

Rehearing Denied July 20, 1956.

Neptune & Stocker, Robert H. Neptune, and A. O. Harrison, Bartlesville, for plaintiff in error.

John F. Pendleton, Nowata, Richard K. Harris, Bartlesville, for defendants in error.

## PER CURIAM.

The correctness of the trial court's judgment hinges upon the question of what rights and interests were conveyed by a certain instrument denominated "Conveyance of Oil and Gas Royalty" pertaining to certain real estate situated in Washington County. Defendants in error are successors in interest to grantee and plaintiff in error successor in interest to the grantor.

Defendants in error, as plaintiffs in the District Court, claimed ownership of all the oil, gas and other mineral interest under the property as successors in interest under the conveyance and sought judgment enjoining and restraining the plaintiff in error, as defendant, from interfering with their mining for oil and gas and other minerals on the premises. This appeal arises from the judgment of the trial court granting the relief sought by the plaintiffs, now defendants in error. The effect of the judgment was a determination that the questioned instrument was a conveyance of the minerals under the land and not merely a royalty deed, as contended by plaintiff in error.

The body of the instrument in question reads as follows:

" 'This Agreement, Made and entered into on this the 1st day of October, 1919, by and between Pearl Ross, nee Wallace, and E. W. Ross, her husband, parties of the first part, and Clara I. Daugherty, second Party, Witnesseth:

" 'That, Whereas, the first parties, are the owners in fee simple of the following described real estate, situated in Washington County, State of Oklahoma, to-wit:

" 'The Southwest Quarter of the Northwest quarter and the Southwest quarter of the Southeast quarter of Northwest quarter, Section Five,

Township Twenty-Five, North, Range Fourteen, East, containing 50 acres, more or less,

all of which said land is subject to an oil and gas mining lease in which said lease there is reserved to the owner of said premises and now owned by said first parties, a royalty on all oil and gas produced or that may be produced and saved from said premises.

" 'And, Whereas, said parties of the first part are desirous of granting to said second party the right to receive said royalty so reserved in said oil and gas lease covering said land, and now being paid to and received by said first parties, and to make provision for the transfer and conveyance of same to said second party, and the heirs, successors and assigns of second party;

" 'Now, Therefore, the said parties of the first part, for and in consideration of the sum of One Dollar and other considerations, in hand paid by Second Party, at and before the delivery hereof, the receipt of which is hereby acknowledged, do hereby grant, sell and convey to said party of the second part, her heirs, legal representatives or assigns, the unconditional right and privilege to receive all royalty on oil and gas that is mined, produced and saved from the above described real estate under the oil and gas mining lease that is now in effect upon said premises, or any continuance or extension thereof, or any new lease or leases that may be executed upon said land' and the title to said royalty on said oil and gas so mined and produced on and from said land as aforesaid shall immediately pass to and vest in said second party upon the severance of the same, and said second party shall have the absolute right to take possession of the same or to sell the same as if she were the owner of said land, and shall have all the rights incident to the ownership of

said royalty on oil and gas as the owner of said land has or may have under said oil royalty so sold under this contract stored upon said premises, and with the right in said second party to go upon said lands and visit the well located thereon from time to time.

" 'It is understood and agreed that in the event the present owner of said oil and gas lease upon said premises should abandon the wells now upon said lands, or for any reason should forfeit their rights under said oil and gas lease, the said second party, her heirs, successors and assigns, shall have the right to go upon said premises and take possession of said wells and re-equip same, and continue the operation of said wells receiving the product from such wells, or any other wells that may be drilled thereon.

" 'For said consideration, said party of the first part does hereby assign, transfer and set over to said second party all rights, privileges, royalties or benefits of any kind that may accrue to them under and by virtue of said oil and gas lease covering said land.

" 'The first parties further covenant and agree that upon the request of the said second party, they will execute such division or transfer order or orders, or such conveyances and evidences of title as may be necessary to secure to said second party the proper delivery of the property sold to second party hereunder, and to insure to said second party the receipt of the same or the value thereof in money, and they will do any and all things necessary to secure to said second party all of the royalty benefits accruing or that may accrue under the oil and gas lease upon said land.

" 'It is further mutually agreed between the parties hereto that this agreement shall be evidence to all persons of the interest of the said second party in the lands above described, to

the extent above mentioned, and that same shall be authority to any and all persons to pay to and settle with said second party for the royalty on oil and gas that may be produced, extracted and saved from the said described premises; that this grant shall be and constitute a continuing bill of sale and conveyance to said royalty oil and gas and shall operate to immediately transfer the title to said interest in said oil and gas whenever same is brought to the surface of said land; and that this grant shall be and constitute an easement and charge upon said described land in favor of second party, and shall run with and be attached to said land, and the rights in and ownership thereof.' "

If the trial court was correct in determining the instrument to be a mineral conveyance, the judgment is correct as both parties on appeal agree.

■ In determining the correctness of the trial court's finding, we apply the rule established in this jurisdiction that in cases such as this the intention of the parties expressed in the instrument controls. Such intention must be deduced from the entire agreement, and every provision must be construed so as to be consistent with every other provision, if possible, and that construction adopted which gives effect to every part of the agreement. Colonial Royalties Co. v. Keener, Okl., 266 P.2d 467, and cases cited therein.

■■ Since the denomination given the instrument to be construed has no bearing upon the intention of the parties expressed in the instrument, Colonial Royalties Case, supra, we pass directly to a consideration of the agreement proper in order to determine the question posed in this appeal.

The intention of the parties to the conveyance being a question as to what was to be conveyed, the descriptive words used should be first considered. While the thing or interest to be conveyed in most instances is denominated "royalty on oil and gas" in

the last grammatical paragraph the conveyance expresses the grant as constituting "a continuing bill of sale and conveyance to said royalty oil and gas and shall operate to immediately transfer the title to said interest in said oil and gas * * *."

This court has on several occasions pointed out the distinguishing characteristics of a mineral right and a royalty right and noted that conveyancers frequently use the term "royalty" to denote an interest in the mineral rights. See Colonial Royalties Co. v. Keener, supra, citing Melton v. Sneed, 188 Okl. 388, 109 P.2d 509, and other cases. Such situations have given rise to our pronouncement expressed in Meeks v. Harmon, 207 Okl. 459, 250 P.2d 203, that cases of this nature must be approached for a concrete solution upon the individual facts of each case, and where no claim of ambiguity is made, look to the four corners of the instrument and from it alone weigh the quantity and quality of the conveyance, and that the term "royalty" however employed must not be lifted out of its context, nor need it be given a strict or liberal construction to meet the exigencies of partisan interest. The determination of the interest conveyed then is governed by the intention of the parties to be deduced from the instrument as a whole.

It will be noted that the instrument in question grants the right to receive all "royalty on oil and gas" produced and saved from the land under the oil and gas lease then in effect, or any continuance or extension thereof or any new lease or leases, with the privilege of storing the "oil royalty" upon the premises, and in the event of abandonment by the owner of the lease, grantee have the right to take possession and operate the wells then existing or that might be drilled, receiving the produce from all such wells; the grant constituting an easement and charge upon the land running with and attached thereto.

From a careful consideration of the instrument as a whole it is clear that it was the intention of grantors to convey all their interest in the royalties under the lease

then in existence, and any interest in royalties under any other leases, together with the right to take the whole of production on abandonment by the owners of the existing lease. Grantor, then, purported to convey all possible oil and gas revenues they might have or acquire from the land.

Grantor, at the time the instrument was made, had title to the surface estate, the royalty interest reserved under the oil and gas lease and the possibility of a reverter of the minerals. All such interests are interests in real property, alienable and might be conveyed separately and independently.

We find that it was not the intention of grantor to limit the conveyance to royalties under the existing lease, but to grant and convey the proceeds or income from the minerals in and under the land that might be realized by the grantors under the existing lease, subsequent leases or by personal operation of wells upon the land by grantee. The instrument being intended a conveyance of all the proceeds or income from the minerals possible of realization by grantors it carried with it all their beneficial ownership of the oil and gas minerals, and under the rule laid down in Burns v. Bastien, 174 Okl. 40, 50 P.2d 377, constitutes a conveyance of grantors' entire interest in the oil and gas minerals.

Affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN and DAVISON, JJ., concur.

HALLEY, BLACKBIRD, JACKSON and HUNT, JJ., dissent.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner Crawford, and approved by Commissioners Reed and Nease, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.