Orris KNOX, Plaintiff and Respondent,

v.

Helen KRUEGER, Lallas Bateson, Alice Johnson and Eunice Kosel, Defendants and Appellants.

No. 8325.

Supreme Court of North Dakota.

Oct. 13, 1966.

Walter O. Burk, Williston, for plaintiff and respondent.

Palda, Palda, Peterson & Anderson, Minot, for defendants and appellants.

TEIGEN, Chief Justice.

The defendants appeal from a judgment quieting title to certain oil and gas royalty interests in the plaintiff. The trial court held that the plaintiff is the owner of 1¼% of all the oil and gas produced from certain of defendants' lands described in the complaint. A trial de novo is asked in this Court.

It was the contention of the defendants in the trial court, as it is now, that the plaintiff is entitled to have title quieted in 1¼% of ⅛th of all the oil and gas produced from said lands.

The primary issue is the interpretation to be placed upon an assignment of royalty received by the plaintiff from one K. R. Flem (since deceased) on or about April 12, 1954. Mr. Flem was then the surface and mineral owner of the lands described in this assignment. These lands are now owned by the defendants in this action. At the time the assignment was given in 1954, the lands were under an oil and gas lease to Sohio Petroleum Company dated May 2, 1949. Under the provisions of this lease, Flem was to receive "the equal one-eighth part" or at lessor's option to receive "pay" for "such one-eighth royalty" of all the oil and gas produced from the land described in the complaint, and other lands. It was also established that Flem gave to the plaintiff three assignments of royalty, each describing different lands, in a "one package transaction." At the time the assignment of royalty was given, the plaintiff was an employee of the K. R. Flem Company, and had been so employed for about ten years. The record does not disclose the nature of the business of this company.

During the trial the plaintiff was permitted to testify, over the objection of the defendants, that he paid $574.00 in cash for the three assignments of royalty; that of this sum, $194.00 was the consideration paid for the assignment in question here. He also testified the consideration was computed at the rate of one dollar per acre of the royalties or minerals owned by Flem. The assignment in question describes 194 acres. The defendants' objection to the admission of this testimony was grounded on Section 31–01–03, N.D.C.C., commonly referred to as the Dead Man's Statute. This statute is applicable only to transactions with or statements by the deceased in a civil action or proceeding by or against executors, administrators, heirs at law, or next of kin, in which judgment may be rendered or ordered entered for or against them. We have held that testimony concerning a transaction with a deceased is admissible where none of the parties to the action are representatives, heirs, or next of kin of the deceased. First National Bank of Glasgow, Mont. v. Carroll, 46 N.D. 62, 179 N.W. 664; Mowry v. Gold Stabeck Co., 48 N.D. 764, 186 N.W. 865; Heuer v. Heuer, 64 N.D. 497, 253 N.W. 856; McDonald v. Miller, 73 N.D. 474, 16 N.W.2d 270, 156 A.L.R. 1328. There is no evidence in this record that the defendants are representatives, heirs, or next of kin of Flem. The defendants' answer admits they are heirs at law of K. R. Flem, but the complaint contains no allegation to that effect. Therefore it is not admitted as a fact from the pleadings.

The trial court found that the defendants are the successors in interest of K. R. Flem by virtue of a final decree of distribution in his estate, but there is no evidence in this record upon which to base the finding. We have searched the record with great care and are unable to find any evidence whatever that places these defendants in the privileged class under Section 31–01–03, supra. The trial court overruled the objections and allowed the testimony. On the basis of the record we find the trial court did not err in so doing.

At the time of the execution of the assignment of royalty in question (hereinafter referred to as Exhibit 1), two other assignments of royalty (hereinafter referred to as Exhibits 2 and 3) were also executed by Flem on other lands he owned. Defendants objected to the admission of Exhibits 2 and 3, on the grounds of immateriality, that they were outside the scope of the pleadings, and that to admit them was in contravention of the Dead Man's Statute.

None of these objections has merit. The assignments were coterminous contracts and therefore within the scope of the issues framed by the pleadings. They are material in deciding the intent of the parties at the time of the execution of all of the assignments, and the Dead Man's Statute is not applicable for the reasons heretofore stated. Several contracts relating to the same matters between the same parties and made as parts of substantially one transaction are to be taken together. Section 9–07–07, N.D.C.C. This statutory provision is a rule of interpretation, and means that they are to be "taken together" for the purpose of interpreting either the transaction to which they relate, or the several contracts themselves. First National Bank of St. Thomas v. Flath, 10 N.D. 281, 86 N.W. 867. We hold the trial court did not err in admitting Exhibits 2 and 3.

We come now to the main issue: construing the operative words of the granting clause of Exhibit 1, which is the assignment of royalty in issue in this action. The pertinent parts of the clause state:

> K. R. Flem of Sherwood, North Dakota, hereinafter called assignor, for and in consideration of the sum of Ten and more Dollars and other good and valuable considerations to it in hand paid by Orris Knox of Sherwood, North Dakota hereinafter called assignee, the receipt of which is hereby acknowledged and confessed, does hereby sell, assign, transfer, convey and set over unto said assignee, all of his right, title and interest in and to *One and one-fourth percent (1¼% of all the) royalty, of all of the oil and of all the gas produced and saved from the hereinafter described lands * * *.*

(Emphasis supplied)

And then the habendum continues:

> To have and to hold the said assignee, his heirs, administrators, and assigns said royalty as above set forth, and said oil and gas so produced and saved from said lands to be delivered free of cost to the royalty owner in the pipe line serving said premises or tanks erected thereupon for the purpose of storing such products, together with the rights, privileges and benefits to be derived therefrom, and assignor does hereby assign said royalty *under the lease now covering said lands as well as any lease, or leases, that may be hereafter* made covering said premises.

(Emphasis supplied)

The lease adverted to in the habendum clause is the oil and gas lease between Flem and Sohio Petroleum Company, which lease was in force at the time the assignment of royalty was executed. Under the terms of this lease, Flem, as lessor, was entitled to one-eighth of the oil and gas produced and saved from the leased premises, or the equivalent in money, and Sohio Petroleum Company was entitled to the remaining seven-eighths.

Similar printed forms of assignments were used in all three assignments, but the amount of royalty assigned described in the granting clause is different in Exhibits 2 and 3. The granting clause in Exhibits 2 and 3, insofar as it differs from Exhibit 1, states as follows:

.62½ hundredths of one - percent (.62½ of 1%) royalty, of all of the oil and of all the gas produced and saved * * *.

It was stipulated that Flem was the owner of all of the surface and all of the minerals in the land described in Exhibit 1; that he was the owner of all of the surface, and one-half of the minerals, in the land described in Exhibits 2 and 3. The evidence establishes that all three assignments, Exhibits 1, 2, and 3, were typed by the notary public who acknowledged Flem's signature, and at the direction of Flem, who dictated to him the words to be typed into the blank spaces on the printed assignment forms. On examining Exhibits 2 and 3, we conclude the typist made a typographical error when he placed a decimal point ahead of 62½ hundredths of one per cent, but that he correctly typed the fraction intended in the parenthetical phrase contained within the written phrase, as follows: "(.62½ of 1%)." .62½ hundredths of one per cent is certainly not common usage, nor is it understandable. A literal interpretation is "62½ hundredths hundredths of one per cent." We believe this to be an unacceptable usage of terms to state a fractional part. We conclude the typist correctly stated the fraction to be conveyed in the parenthetical phrase contained within the written phrase, which is as follows: "(.62½ of 1%)" and that the parties intended the following: "62½ hundredths of one per cent (.62½ of 1%) royalty, * * *"

Giving the above construction to Exhibits 2 and 3 makes them reconcilable with Exhibit 1. Sixty-two and one-half hundredths of one per cent is one-half of one and one-quarter per cent. Because Flem owned one-half of the minerals underlying the land described in Exhibits 2 and 3, and all of the minerals underlying the land described in Exhibit 1, it indicates that he intended to convey the same proportionate amount of the production as it relates to the minerals owned in each of the three assignments; that is, one and one-fourth per cent of the royalties from the land wherein he owned all of the minerals, and one-half that amount, or .62½ of 1%, from the land wherein he owned one-half of the minerals. This conclusion is further strengthened when we consider the amounts paid for the assignments. They were calculated at the rate of One Dollar per mineral acre owned.

The defendants argue that the parenthetical phrase contained in the granting clause of Exhibit 1, which states "(1¼% of all the)," grants one and one-quarter per cent *of* royalty as opposed to one and one-quarter per cent royalty. We do not so find. The parenthetical phrase in this instance is used as an explanatory or qualifying phrase inserted in the phrase which is grammatically complete without it. Omitting the parenthetical phrase, it reads: "One and one-fourth per cent ( * * * ) royalty." These are the operative words of the grant; they are not doubtful, but clear and distinct. The parenthetical phrase would convey a much lesser interest than the written phrase.

It should be observed also that a difference exists between a ⅛ royalty and ⅛ *of* royalty. The former gives the right to one out of every eight barrels of oil produced. The latter usually gives the right to ⅛ of the usual ⅛ royalty, or one out of every 64 barrels of oil produced.

Manual of Oil and Gas Terms, Second Edition, Williams and Meyers, p. 345.

See also Kuntz, Oil and Gas, section 16.3, p. 385; Meeks v. Harmon, 207 Okl. 459, 250 P.2d 203; Harriss v. Ritter, 154 Tex. 474, 279 S.W.2d 845; Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563.

The assignment of royalties in Corbett v. La Bere, N.D., 68 N.W.2d 211, conveyed "One percent (1%) royalty, of all the oil

and of all the gas produced and saved." Although the interpretation of the quoted phrase was not in issue, the court said:

> An examination of the assignment of royalty at once discloses that the operative words of that instrument which constitute the granting clause are clear and purport to convey to the Middlewest Investment Company, Inc. one per cent of all the gas and oil produced and saved from the lands therein described.

The assignment of royalty under consideration is clearly a grant. Section 47–09–05, N.D.C.C. A grant executed by a private individual or corporation shall be interpreted in favor of the grantee, except that a reservation in a grant is to be interpreted in favor of the grantor. Section 47–09–13, N.D.C.C.; Corbett v. La Bere, supra.

> Section 47–09–11, N.D.C.C., provides:
> Grants shall be interpreted in like manner with contracts in general except so far as is otherwise provided by this chapter. If the operative words of a grant are doubtful, recourse may be had to its recitals to assist the construction, and if several parts of a grant are absolutely irreconcilable, the former part shall prevail. A clear and distinct limitation in a grant is not controlled by other words less clear and distinct.

A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates. Section 9–07–12, N.D.C.C.

It was stipulated by the parties that the decedent Flem intended to convey a royalty interest rather than a mineral interest because he desired to retain control over the right to lease the property for oil and gas purposes. The consideration paid for Exhibit 1 was computed on the same basis as the consideration paid for Exhibits 2 and 3. All three assignments were prepared, executed and delivered at the same time, and the consideration was paid in one sum for all three. Considering all the factors and interpreting the grant in favor of the grantee, we find that the written words take precedence over the explanatory words contained within the parenthetical phrase. It is a general rule of construction that written words take precedence over explanatory words. Since the words contained within the parentheses, intended to be explanatory, are repugnant and not reconcilable with the written words, which are clear and distinct, we must disregard the parenthetical phrase in construing the operative words of the grant. This interpretation conforms to the manifest intention of the parties as determined from the attendant circumstances under which they acted.

For the reasons aforesaid, we reach the conclusion that the plaintiff acquired one and one-fourth per cent of all of the oil and of all of the gas produced and saved on the land described in the complaint. We affirm the judgment.

Judgment affirmed.

STRUTZ, ERICKSTAD, KNUDSON and MURRAY, JJ., concur.