**ALPINE CONSTRUCTION CORPORATION,**
Petitioner,

v.

**Billy Wayne FENTON and Patricia Ann Fenton, Respondents.**

Nos. 70603, 71030.

Supreme Court of Oklahoma.

Nov. 1, 1988.

John N. Henderson, Stigler, for petitioner.

Cate & Harrison by Gene V. Primomo, Muskogee, for respondents.

LAVENDER, Justice:

In a warranty deed executed February 1, 1950 Douglas Arthur Bly and Ruby May Bly conveyed the property involved in this controversy to Thomas Luther Leird and

Robbie O. Leird. The deed contained the following exception clause:

EXCEPT all coal and asphalt lying in or under said land with right of ingress and egress to go upon said land and remove said coal and asphalt by strip mining method, which is hereby reserved unto the grantors herein, their heirs, successors or assigns, and said grantors, their heris [sic] successors or assigns shall pay to the grantees herein, their heirs successors or assigns the sum of $25.00 per acre as surface damages for the first ten acres so strip mined, and $35.00 per acre for all acres strip mined thereafter.

The Leirds, by warranty deed executed November 27, 1954, conveyed their interest to M.E. Beaty and Phurdy E. Beaty. The Beatys in turn conveyed the property to respondents Billy Wayne and Patricia Ann Fenton by warranty deed executed March 3, 1959. The deed of conveyance to respondents contained the following provision in the description of the property conveyed:

[A]nd also less an undivided one-fourth (¼) interest in and to all of the oil and gas in and under and that may be produced from said lands heretofore reserved by Douglas Arthur Bly and Ruby May Bly, husband and wife, in that certain deed dated February 1, 1950, from said Douglas Arthur Bly and Ruby May Bly, husband and wife, to Thomas Luther Leird and Robbie O. Leird, husband and wife, of record in said County Clerk's office in Book 149 at Pages 170–71, and also less an undivided three-fourths (¾) interest in and to all of the coal and asphalt in and under and that may be produced from said lands reserved by said Douglas Arthur Bly and Ruby May Bly, husband and wife, in the deed last described.

Petitioner Alpine Construction Corporation leased the coal mining rights reserved in the aforementioned conveyances from Douglas A. and Ruby M. Bly. This lease was executed April 23, 1986.

The present dispute arose when Alpine attempted to gain access to the property covered by the lease to begin strip mining operations. Alpine was denied access by the Fentons and so instituted the present action to obtain injunctive relief to prevent the Fentons from interfering with Alpine's exercise of its rights under the lease. The Fentons answered Alpine's petition with a denial of Alpine's rights to take coal on the property and counter-claimed for damages arising from Alpine's alleged trespass, and alternatively demanded that Alpine be required to follow eminent domain procedures to acquire the right to use property for strip mining purposes.

In the course of the ensuing dispute the trial court was requested to rule by way of partial summary adjudication on two questions:

"Assuming that ALPINE does have rights of ingress and egress for coal mining purposes upon the subject property, does the surface damage payment provision as contained in the reservation clause of Petitioners' "Exhibit 2" control as to the compensation the surface owners, FENTON, are entitled to receive as a result of such mining operations?"

"Assuming ALPINE has the rights of ingress and egress for coal mining purposes upon the subject property, but that the compensation provisions of FENTON'S predecessors in title do not apply, what is the proper manner to determine compensation for surface damages to FENTON in the instant case?"

The trial court's ruling on the first question was:

ALPINE has rights of ingress and egress but the $25–35 per acre compensation is not applicable in that this Court has decided that the original agreement as to said amount is not binding upon subsequent grantors or grantees because of the intent requirement at the time of the transaction.

As to the second question, the court ruled:

THEREFORE, the answer to Question # 2 (measure of Damages) is that said damages (is [sic] any) should be decided under the provisions of the Surface Damages Act, Title 52, Section 318.2, *et seq.*

The trial court's reasoning in support of its rulings was that it would be inequitable to allow a compensation amount set in 1950

to apply to land values in 1988. The court concluded that this could not be the intent of the parties. The trial court also concluded that the oil and gas surface damages act, 52 O.S.Supp.1982 § 318.2 et seq., would provide an equitable guide to determining the amount of damages recoverable by the Fentons. The court certified these rulings for interlocutory review. Alpine petitioned for certiorari to obtain review of the rulings by this Court. We have previously granted the petition.

## I.

In the case of *McNeill v. Shaw*,[1] this Court stated in syllabus:

> Where a written contract is complete in itself, and viewed in the entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended. Whatever mineral interest or royalty interest is conveyed or reserved depends upon the terms of the instrument.

In the course of its order the trial court found that the language of the exception clause is clear and unambiguous. Our review of the record brings us to the same conclusion; the exception clause in this case is complete, is without ambiguity and is sufficient to reserve unto the grantors the rights specified.[2] The rights explicitly here reserved were: 1) the right to ingress and egress on the surface of the property; 2) the right to remove coal and asphalt by the strip mining method; and 3) the right to pay surface damages in a sum certain.

The trial court and the Fentons, in support of the trial court's ruling, state that the third right above stated may be considered separately from the reservation as a whole and extrinsic material may be examined to determine whether the parties intended the third right to be binding on the parties' heirs, successors and assigns. In taking this position both the trial court and the Fentons assume that the compen-

sation clause may be denominated a covenant and thus separate from the reservation as a whole. This assumption begs the question.

The question as it appears to this Court is whether there is ambiguity relating to the reservation which would allow the consideration of extrinsic evidence. The single case upon which the trial court and the Fentons support the consideration of extrinsic evidence of intent is *Town of Skiatook v. Brummett*.[3] In that case the town of Skiatook accepted a grant of right of way for a water line which contained a covenant which bound the town to supply water to the grantor or his successors. The dispute arose when the grantor attempted to subdivide his property and took the position that the town would be required to furnish water to all of the houses on the new subdivision. This Court took the position that the covenant to supply water to the land was indivisible and thus only applied as to the requirement to furnish water as existing when the covenant was entered into.

Two factors clearly appear to differentiate the present case from *Brummett*. The first is that *Brummett* dealt with a covenant complete in itself and not with a provision which is part and parcel of a mineral reservation. The second is that there existed changes of circumstances in *Brummett* which took the question of applicability of the covenant beyond the circumstances existing at the time of the covenant and beyond the covenant's explicit coverage. In the present case the situation at issue is explicitly covered by the language of the reservation which states that the provision for payment of a sum certain for surface damages shall apply to the heirs, successors and assigns of both the grantors and grantees.

We find the present case to be analogous to the case of *McKee v. Thornton*,[4] in which the plaintiff challenged the validity

---

**1.** 295 P.2d 276 (Okla.1956); see also *Meeks v. Harmon*, 207 Okl. 459, 250 P.2d 203 (1952).

**2.** See *Erwin v. Poole*, 446 P.2d 601 (Okla.1968).

**3.** 387 P.2d 115 (Okla.1963).

**4.** 79 Okl. 138, 192 P. 212 (1920); date of opinion and mandate altered nunc pro tunc, 81 Okl. 261, 198 P. 303 (1920).

of a lease held by defendant, granted by plaintiff's predecessor in interest, on the ground that defendant had not given adequate consideration for the lease and had failed to develop the lease within a reasonable period of time. In *McKee* the plaintiff had purchased the property subject to the lease and the lease had clearly provided that development must be undertaken within twenty years of the date of the lease. The plaintiff brought his action some eleven years after the date of the lease. The trial court entered judgment for the plaintiff and this Court reversed, stating:

> There is a presumption of law that one purchasing land burdened with a lease takes that fact into consideration in the payment of the purchase price. Plaintiff, being charged with actual notice of the lease and of all of its conditions, and the lease being specifically excepted in the deed to Thornton, he is presumed, in the absence of proof to the contrary, to have contracted in reference thereto. He took the land subject to the lease with which it was incumbered, and is not in a position to raise the question of the consideration passing between the lessor and the lessee.

> Plaintiff having purchased the land subject to the lease to the defendant, and this lease having been taken into consideration in the determination of the purchase price it only remains to be determined whether this lease made by the grantor of the land to the defendant for an adequate consideration is so unconscionable in its terms as to be set aside by a court of equity. It is admitted by the plaintiff that the grantor might have made a gift to his son-in-law, the defendant, and might have reserved all the mineral rights, and that the recital of such reservation in the deed would estop the plaintiff from the action herein to quiet title, against the defendant. How the defendant can be placed in a less favorable position as to the determination of

his rights, when these rights are dependent on an oil lease executed in good faith by the grantor and excepted in the grant to the plaintiff, in the absence of any showing of fraud, duress, or undue influence, is not clear. And while the lease is to be construed most strongly against the lessee, and most liberally in favor of the lessor, and in the interest of development and against delay and unproduction, parties are not to be precluded from contracting in good faith.... (citations omitted)

In the present case, as in *McKee*, we must presume that the Fentons, who took the property with actual notice of the strip mining rights reservation, took that fact into consideration in negotiations for the purchase price of the property.[5] Further, as we found the length of the development clause to be a proper subject for contract in *McKee*, we find the surface damage compensation to be a proper subject for contract in the present case.[6] We find no reason to hold that the Fentons should not be bound by a contractual provision of which they had actual notice and which clearly and unambiguously applied to affect the enjoyment of their surface estate. The Fentons have offered no citation of authority to support such a result and independent research has failed to discover a line of authority which would relieve the Fentons from this reservation of rights.

## II.

The trial court here relied on equitable principles to reach the result obtained in its ruling in this case. The Fentons argue that the trial court's powers in equity support the court's action. In *McKee* this Court recognized that the plaintiff in that case might be relieved of the burden of the lease if the enforcement of the terms resulted in drainage of the oil

---

**5.** It would also appear that the Fentons' acceptance of a deed which recited the existence of the reservation would estop them from denying the rights recognized in the deed under which they claim their interests. See *Williamson v. Davis,* 74 Okl. 174, 177 P. 567 (1919).

**6.** The right of parties to contract regarding payment for surface damages has been impliedly recognized by the Legislature. See 52 O.S.Supp. 1982 § 318.7.

and gas under the property.[7] Our review of this case however reveals no support for the trial court's ruling based on equitable principles. We would point out that the improvements that have been placed on the property by the Fentons were placed there with knowledge of the strip mining rights held by Alpine's lessors. We would further point out that the Coal Reclamation Act of 1979[8] imposes on a strip mine operator the duty to restore land affected by its operation to the capacity of use which the property supported prior to operations, or to a capacity for a higher use, when mining operations cease.[9] The Coal Reclamation Act also imposes many other duties on the operator which are clearly focused on minimizing damages to the surface of affected property. To rely on equitable principles in this case it appears that the trial court has presupposed that Alpine will not fulfill the obligations imposed by the Coal Reclamation Act.

### III.

■ Because we have found that the correct answer to the first question should have been affirmative, we find no need to address the second question raised, the necessity to answer which was premised on a negative answer to the first. We would point out however that by its specific terms the applicability of the oil and gas surface damages act is limited to oil and gas drilling and preparations for drilling.[10]

### IV.

During the consideration of the matters involved in the petition for certiorari in this case, Alpine has also filed an application for assumption of original jurisdiction and petition for writ of prohibition to prevent the trial court from proceeding to set a supersedeas bond in this case. It appears that the trial court has suspended proceedings to set such a bond pending the rendering of this Court's decision in this matter. Given the guidance of this Court's opinion it would not appear that prohibition would now be necessary to prevent the challenged proceeding. The Court thus declines to accept original jurisdiction of the matter.

### V.

The petition for certiorari to review certified interlocutory order and the application for assumption of original jurisdiction and petition for writ of prohibition are hereby ordered consolidated for disposition. The application for assumption of original jurisdiction and petition for writ of prohibition is DENIED. The certified interlocutory order of the trial court is REVERSED and the cause is remanded to the trial court for further proceedings in accordance with the views expressed in this opinion.

HARGRAVE, V.C.J., and SIMMS, OPALA and ALMA WILSON, JJ., concur.

KAUGER and SUMMERS, JJ., concur in part, dissent in part.

HODGES, J., dissents.

---

7. 192 P. at 214.

8. 45 O.S.1981 §§ 742.1 through 792.

9. See 45 O.S.1981 § 746 and 45 O.S.1981 § 757.

10. 52 O.S.Supp.1982 § 318.2.